ANDREW O. LARSON v. FOLEY BROTHERS, INC.,
AND OTHERS.
MINNESOTA MINING & MANUFACTURING COMPANY
AND ANOTHER, RESPONDENTS.

151 N. W. (2d) 780.

June 16, 1967—Nos. 40,318, 40,319.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne, O. C.
Adamson II,* and *G. T. MacIntosh II,* for Foley Brothers and its insurer.
*Robins, Davis & Lyons* and *Arnold M. Bellis,* for employee.
*Tyrrell, Jardine, Logan & O'Brien* and *Mark T. Solstad,* for respondents.

SHERAN, JUSTICE.

Certiorari to review a decision of the Industrial Commission.

On April 14, 1954, Andrew Larson sustained an injury which arose out of and during the course of his employment with Foley Brothers, Inc., insured by St. Paul Mercury Indemnity Company. Hospital and medical attention was afforded, but it was not claimed at that time that compensable disability was attributable to the accident. On September 16, 1960, while employed by Minnesota Mining & Manufac-

turing Company, insured by Indemnity Insurance Company of North America, the employee sustained injuries which also required hospital and medical attention. On March 13, 1961, he was hospitalized because of an epileptic seizure. Since then he has been disabled.

On May 11, 1961, a petition for compensation was filed in which it was alleged that the accident of April 14, 1954, caused epileptic seizures which were aggravated by the trauma of September 16, 1960. Hearings before the referee for the Industrial Commission which commenced November 17, 1961, resulted in a determination that the disability claimed by the employee attributable to brain injury leading to epileptic seizures was caused by neither the 1954 nor the 1960 occurrence.

Upon the employee's appeal to the Industrial Commission, the determination of the referee was reversed. The commission found that the seizures suffered by the employee resulted in temporary total disability from March 13, 1961, to October 26, 1962, (the date of the last hearing) and were causally related to the personal injury of April 14, 1954, but that the condition causing the employee's seizures was not related to nor aggravated by his personal injury of September 16, 1960. The significant question raised and argued in this court is whether this determination is sustained by the evidence.

Because we feel the case to be governed by our oft-repeated rule that the determination of the Industrial Commission in workmen's compensation matters will be sustained if reasonably supported by the evidence,[1] we affirm its determination.

Expert opinions on the question of causal relationship as between the epileptic seizures and the accidents of 1954 and 1960 were expressed by four qualified experts. Dr. John B. Brainard, who first examined the employee on September 16, 1960, immediately following his injury on that date, testified that the cause of the disabling epileptic seizures was the head injury predating the 1960 accident. He gave the opinion that there was no causal relationship between the seizures and the accident of 1960.

---

[1] See, Schmoll v. J. W. Craig Co. 228 Minn. 429, 37 N. W. (2d) 539; 21 Dunnell, Dig. (3 ed.) § 10426(13).

Dr. Zondal R. Miller, a qualified neuropsychiatrist and the expert witness called by employee in support of his theory that the seizures were caused by the 1954 accident and aggravated by the incident of 1960, testified that "there is a causal relationship between the accident sustained in 1954 * * * and this subsequent development of seizures," and that "the second accident was probably an aggravating or precipitating factor in having more seizures."

Dr. David D. Norman, called as a witness by Minnesota Mining & Manufacturing Company, is also a neuropsychiatrist. He first examined the employee on March 14, 1961, at Mounds Park Hospital in St. Paul, at which time the employee was unconscious and convulsed. He diagnosed the condition as that of a convulsive disorder neither caused nor aggravated by the accident of 1960. Upon cross-examination by Mr. Mosio, employee's attorney, Dr. Norman testified:

"If the history as given is correct, that he had no injury and no convulsions prior to * * * 1954, and that he had a grand malconvulsion immediately after being struck on the head, it is my opinion that his convulsive disorder is causally related to that blow on the head of 1954."

Dr. V. R. Zarling, also a neuropsychiatrist and called by Foley Brothers, testified that in his opinion the disabling seizures to which the employee was subject were not caused by either the 1954 or the 1960 accident.

From this recitation of the medical opinions it is clear that if these opinions were properly received in evidence, the Industrial Commission would have been justified in affirming the decision of the referee; or in finding the seizures attributable to both accidents; or in finding, as it did, that the seizures were caused solely by the accident of 1954.

It is the contention, however, of Foley Brothers that the opinions of Drs. Brainard, Norman, and Miller should not have been received by the referee or considered by the Industrial Commission because none of these experts was afforded an accurate description of the facts surrounding the incident of 1954. The employee (interested because connecting his condition to the accident of 1960 would increase his weekly benefits) supports this position in so far as it involves the testimony

of Drs. Brainard and Norman eliminating the 1960 accident from consideration as a cause of disabling injury.

It must be acknowledged that the factual foundation for the opinions expressed by the experts was not established with precision. With respect to the 1954 accident this was due in part, no doubt, to the lapse of 7 years between the initial trauma and the disability attributable to the seizures. In the meantime, the physician who examined the employee at the site of the 1954 accident had died and, except as recorded in his notes, we do not have the details of his observations. Even so, there was evidence received without objection supportive of the inference that the employee suffered a blow on that day of sufficient severity to cause loss of consciousness; that he convulsed while unconscious at the site of the injury in a way never before experienced by him; that similar seizures occurred thereafter; but that the recurrent seizures experienced on March 13, 1961, (the day on which his total disability commenced) were the first in 15 months.

We do not find in the testimony of Drs. Brainard, Norman, or Miller any clear indication that their opinions as to causal relationship between the seizures and the 1954 trauma were contingent upon any fact completely lacking in evidentiary support. Hearsay received without adequate objection may be considered by the Industrial Commission and may supply factual foundation for the opinions of experts.[2]

The nature of the 1960 accident and the patient's course following that event make reasonable the opinion of Dr. Miller that the seizure-causing condition initiated by the 1954 accident was aggravated by the 1960 trauma. But the contrary views expressed by Drs. Brainard and Norman are not incredible. It is true that Dr. Brainard and Dr. Norman assumed in expressing opinions in this regard that the accident of 1960 did not cause brain injury. But this was a permissible hypothesis in view of the fact that Larson was not rendered unconscious by the trauma and there were no signs of head injury noted upon physical examination made that day.

The correctness of the disposition of this case which we are affirm-

---

[2] Nelson v. O'Neil Amusements, 274 Minn. 555, 142 N. W. (2d) 647.

ing, cannot be fully demonstrated. It is possible that Dr. Zarling was right in his view that the employee would have had the seizures even if neither accident had occurred. It seems logical that if the trauma suffered in 1954 was of sufficient severity to cause epilepsy notwithstanding the meager signs of head injury then observed, the trauma experienced in 1960 was an aggravating factor—particularly when we consider Larson's condition reached disabling proportions within 6 months of this latter event. But the commission's determination that the 1954 accident alone is the cause of the employee's present status has this to commend it: The employee was observed unconscious and convulsive at the site of the 1954 accident—a circumstance of itself indicative of recently sustained brain damage. No comparable condition was noted on September 16, 1960. An interval of about 6 months elapsed between that day and the March 13, 1961, seizures found to be so much the culmination of the deteriorating condition as to cause disablement.

The case is a close one. But we feel that we should accede to the Industrial Commission's resolution of it and so affirm.

The employee, having appeared in this court to uphold the finding of causative relationship in so far as the 1954 accident is concerned, is allowed $250 as attorneys' fees even though he joined in relators' position that the 1960 accident was also causative.

Affirmed.