## ELDOR R. BRUCE v. TEL-E-LECT PRODUCTS, INC., AND ANOTHER.

167 N. W. (2d) 27.

March 28, 1969—No. 40694.

*Hyman H. Cohen,* for relator.
*McLeod & Gilmore,* for respondents.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

Certiorari to review a decision of the Industrial Commission denying workmen's compensation benefits for total disability to an employee who, on November 20, 1956, suffered an injury to his back arising out of and in the course of his employment. The only question before us is whether the evidence supports the commission's finding that the employee failed to sustain his burden of proving his claim that the 1956 compensable injury to his back caused him to become totally disabled in 1964.

The employee is 41 years old, married, the father of seven children, and resides with his family in Wisconsin. He is a person of borderline intelligence, has only a third-grade education, and can read and write to only a very limited extent. Prior to his accident, he had only limited work experience in carpentry, farming, truck driving, and other types of manual labor. On November 20, 1956, while lifting a heavy object in the course of his duties as an assembler employed by Tel-E-Lect Products, Inc., he suffered an injury to his back. As a result of that injury, he underwent a laminectomy on December 12, 1957, at which time the intervertebral disc at the L4-L5 level was removed. His hospital and medical expenses were paid by Tel-E-Lect's insurer. In addition, he received benefits for temporary total disability, 7 1/2-percent permanent disability to his back, and 52 weeks of vocational retraining. His recovery and his employability, both before and after the operation, were hampered by his limited intelligence and a psychosomatic overlap.

After a period of recuperation, he returned to work for Tel-E-Lect but was employed for only 2 days because he was unable to do the work assigned. Thereafter, he learned the trade of blade, razor, and knife sharpening in a retraining program directed by the Vocational Rehabilitation Division. With their help he set up his own sharpening business, which failed after 6 months due in part to his inability to keep books. He was then employed by a sharpening service for 5 months but quit because his earnings were insufficient. His next employment was with a

plumbing supply company in Wisconsin doing sheet metal layout work, which lasted for 8 months until his employer ceased operations. He was then hired as a maintenance man on March 1, 1961, by the Duncan Yo-Yo Company in Wisconsin and, with several short layoffs due to lack of work, continued in their employ until October 1964, when he was laid off shortly before the company went out of business. He has not worked since.

The employee sought no medical attention for his back from August 4, 1959, to March 1965. During this interval, while working at Duncan, he suffered a hernia in early 1964 which necessitated an operation. In June 1964, he sustained multiple lacerations and contusions as the result of either falling out of, or being thrown from, a moving automobile. He claims that neither of these incidents aggravated his back pain, which he testified grew increasingly worse during this period. The employee also consumed excessive amounts of alcohol, a practice which he attributes to the pain in his back allegedly resulting from the 1956 injury.

In May 1965, the employee underwent a second laminectomy, this time at the L5-S1 level. He then brought this claim against Tel-E-Lect Products, Inc., and its insurer, claiming that the 1956 injury to his back, coupled with his limited intelligence, education, and work experience, resulted in physical and psychiatric problems which by 1965 caused him to become totally disabled and unemployable. After a hearing, the referee found that he was totally and permanently disabled as a result of his 1956 back injury and granted him permanent total disability benefits. Tel-E-Lect and its insurer appealed to the Industrial Commission. In a unanimous decision, the commission reversed the referee and denied benefits on the ground that the employee failed to carry his burden of proving that his "present back difficulties and unemployability are due to the first injury and resultant operation."

It is clear from the record that the employee is presently permanently and totally disabled and unemployable. The critical fact question which the commission was required to resolve is whether this disability is due to the 1956 injury and the resultant operation. The record makes clear that on this issue there is conflict in the inferences which might reasonably be drawn from the employee's testimony and in the opinions of the

medical experts. Dr. David Florence, an orthopedic surgeon who performed the 1965 operation, was called by the employee and testified that, although he cannot prove it absolutely, he is positive that the employee's increasing back pain was related to the 1957 operation necessitated by the 1956 injury. On cross-examination, however, he admitted that later trauma such as the 1964 industrial accident or the fall from a moving automobile could have caused the onset of increased pain. He also admitted that a significant percentage of the employee's disability was due to hand tremors which might well be the result of excessive consumption of alcohol. Dr. Reynold P. Flom, a psychiatrist who had examined the employee in November 1965 and was called by him as a witness, agreed with Dr. Florence's testimony, adding, however, that the employee's back problem was not disabling in itself but was disabling only if taken together with his psychiatric problems, which may or may not have resulted from his 1956 injury, and with his low intelligence.

Dr. Z. R. Miller, a neurologist and psychiatrist who examined the employee in February 1956 and was called as a witness by the employer, testified that the 1964 injury was probably an aggravating factor in the employee's condition. In addition, Dr. E. Harvey O'Phelan, who treated the employee from 1957 to 1959, performed the 1957 operation, and examined him again in March 1965, was called by the employer and testified that the laminectomy and fusion he performed in 1957 was not causally related to the operation performed by Dr. Florence in 1965. He unequivocally expressed the opinion that the employee's present disability was entirely unrelated to the 1956 injury and the resultant operation.

This is another in a long series of cases which come before us for review in which the decision by the Industrial Commission, as the trier of fact, depends upon the resolution of conflicts in the evidence or the inferences to be drawn therefrom and in the opinions of medical experts on the causal relationship between disability and a work-related injury occurring in the course of employment. See, Dudovitz v. Shoppers City, Inc. 282 Minn. 322, 164 N. W. (2d) 873. Causal relationship is a question of fact. Gerhardt v. Welch, 267 Minn. 206, 125 N. W. (2d) 721. In workmen's compensation cases, the Industrial Commission is the trier of fact, Minn. St. 176.421, subd. 6, and this court will not reverse

its factual determinations so long as the evidence and the inferences which may reasonably be drawn therefrom would permit reasonable minds to reach divergent conclusions. See cases collected in 21 Dunnell, Dig. (3 ed.) § 10426(13), note 16. Considering the difficulty the commission experienced in evaluating the employee's testimony and the conflict in the opinions of the medical experts, as well as the evidence that there intervened between the 1956 injury and the employee's present disability (1) over 3 years of productive employment; (2) an industrial accident resulting in a hernia operation; (3) an automobile accident in which the employee fell from, or was thrown out of, a moving automobile; and (4) the 1965 laminectomy at another level of the spine, and the inferences which the commission could reasonably draw therefrom, we cannot say that the commission's determination that the employee failed to sustain his burden of proof on causation is clearly and manifestly contrary to the evidence.

Affirmed.