## JOHN McCRAE v. BRANDT AERO SERVICE AND ANOTHER.

168 N. W. (2d) 683.

June 6, 1969—No. 41423.

*Michael J. Baglio* and *Ronald O. W. Ylitalo,* for relators.

*Firestone, Fink, Krawetz, Miley, Maas & Noonan* and *Stuart Radsom,* for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Peterson, JJ.

PER CURIAM.

This matter is before us on certiorari to review a decision of the Workmen's Compensation Commission which awarded the employee compensation for permanent total disability. It would appear that the relators contend that the employee's disability is not of such a nature as to preclude employment.

The employee, John McCrae, began work with the employer, Brandt Aero Service, in about 1946 and continued his association with the employer until May 10, 1959, the day he sustained the injuries which give rise to this controversy. His duties included flying, instructing students, and checking airplanes for mechanical problems. At the time of the accident, he and a student were taxiing on a runway during a brisk wind. While they were attempting to stabilize the plane, it overturned, and the employee sustained a head injury

which caused him momentarily to lose consciousness. He was taken to a hospital where he remained until May 21, 1959. While in the hospital, he was put in traction and also received "deep therapy" treatments for a short period of time.

After his release, he experienced "terrific headaches," numbness and pain in the hands and arms, and limited motion in his neck. While taking a rehabilitation course at a business college in 1961, he experienced difficulty in concentrating. He felt that he had sustained a loss of memory, and his wife testified as to an irritability which developed after the accident. He could not work for periods of more than 3 or 4 hours a day, and there were weeks when he was unable to work. Doctors called by both respondent and relators testified to a marked degeneration in the cervical area of the spine, a good deal of which was possibly due to the normal process of growing old. The employee was hospitalized for a second time from March 1, 1960, to March 12, 1960, for treatment which consisted of heat, massage, and traction twice a day. Although he attempted to rehabilitate himself by attending the business college, he was unable to do office work except for a position he held briefly with the Society for the Blind, a job which he had to leave because of his inability to concentrate.

The employee was paid compensation for temporary total disability, compensation for retraining, and compensation for an additional period for 30-percent permanent partial disability of the back. In this proceeding he sought a determination that he had sustained permanent total disability as a result of the accident. The referee rendered a decision in favor of the employee which was affirmed on appeal to the commission. The referee, in a memorandum accompanying the decision, stated:

"Although the petitioner has approximately 30 percent permanent partial disability of the cervical spine due primarily to a degenerative condition which to some extent was affected by his injury, the Referee does not feel from a physical standpoint that the petitioner is unemployable.

"The far more serious residuals are the neurological and psychiatric conditions which developed and were discussed by the medical

experts. There was an agreement that the incident was a factor in producing these symptoms.

"The symptoms and complaints have persisted for eight years and for this reason the Referee has allowed compensation on the basis of permanent total disability."

Three doctors and one employment counselor testified for the employee on the question of his claimed permanent total disability. The gist of the employee's contention is that the physical injuries and a neurotic reaction to those injuries combined to totally incapacitate him. This position is supported by the employee's testimony and the testimony of his wife as to his physical condition. The field supervisor of the Minnesota Department of Employment Security was of the view that the employee was not employable in the labor market. A psychiatrist testified that the pains and disabilities resulting from the accident caused the employee's hysterical reaction, and the witness did not feel that the employee would in the future be able to function as a worker. An orthopedic surgeon testified as to a 35-percent disability of the cervical spine, a good share of which was due to previously existing degenerative arthritis. While this witness testified that he felt the employee could work, he was nevertheless careful to point out that his conclusion was based on orthopedic considerations alone—and he also felt that the employee was neurotic.

The employer submitted the testimony of witnesses who said that the employee was able to work. An orthopedic surgeon testified that McCrae was employable but admitted that his opinion was based on a strictly orthopedic view and did not consider the employee from a functional standpoint. The operator of an employment service thought that the employee was employable. A psychiatrist called by the employer also thought the employee could work. As evidence of the employee's ability to work, the employer calls attention to the fact that the employee was able to design and later supervise the construction of his home after the accident.

■ The criteria for determining total disability are found in Green v. Schmahl, 202 Minn. 254, 256, 278 N. W. 157, 158, where we said:

"\* \* \* We chose rather to hold that 'although an injured person may be able to perform some parts of an occupation he may be held to be totally disabled unless he is able to perform the substantial and material parts of some gainful work or occupation with reasonable continuity.' "

This notion has been reiterated in a number of cases. Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; McGuire v. Viking Tool & Die Co. 258 Minn. 336, 104 N. W. (2d) 519; and Fink v. Cold Spring Granite Co. 262 Minn. 393, 115 N. W. (2d) 22.

■ The claim that the employee should not be allowed total disability because he has performed some work about the house is answered in the Berg case (235 Minn. 219, 50 N. W. [2d] 269):

"It is true that employe has performed some work since the accident five years ago. This did not constitute a continuous or steady employment and was performed by employe under great pain and suffering. This factor would not necessarily disprove total permanent disability. An intermittent and limited capacity to earn *something* may not, from a legal concept, lessen a permanent total disability which otherwise falls within the statutory definition thereof set forth in § 176.11, subd. 5. Green v. Schmahl, 202 Minn. 254, 278 N. W. 157; Lorentz v. Aetna L. Ins. Co. 197 Minn. 205, 206 N. W. 699; Monahan v. Supreme Lodge, 88 Minn. 224, 92 N. W. 972. As stated in Horovitz, Workmen's Compensation, Incapacity, p. 279:

" 'Permanent and total disability \* \* \* awards have been upheld, although the employee was *not "absolutely helpless* or physically broken and wrecked, for all purposes except merely to live," and in spite of previously obtaining occasional employment under rare conditions and at small remuneration.' "

The same reasoning leads to the conclusion that here the employee's work on his home does not preclude a finding of permanent and total disability. The record does not show that the employee was so actively engaged in building and supervising that it can be said he was employable.

■ It seems to us that the most persuasive authority in this case is

Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433, where an argument similar to the one posed here was made—namely, that physical disability combined with posttraumatic neurosis to permanently and totally disable the employee. That case also presented a fact question on conflicting testimony. The court there said (230 Minn. 321, 41 N. W. [2d] 437):

"* * * A neurologist, testifying for relator, said that if he assumed that all of Lee's subjective complaints were true he was of the opinion that Lee was suffering from 'a very large additional degree of nervous disability,' but he was unable to say that it would render him totally disabled. Dr. Berkwitz, on the other hand, was of the opinion that Lee was totally disabled as a result of his physical injuries and of his post-traumatic neurosis. It was for the industrial commission, as the trier of fact, to determine, in the light of the evidence as a whole, whether the assumptions of fact embodied in the hypothetical question, upon which Dr. Berkwitz based his opinion of total disability, were true. 2 Dunnell, Dig. & Supp. § 3337. The commission could reasonably so find. As is not at all unusual, there was a conflict in expert opinion. A conflict in the opinions of expert witnesses, however, is to be resolved by the trier of fact, and in so doing the trier of fact may determine the comparative weight to be given to the respective opinions and consider the qualifications of each expert and the source of his information. Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534; In re Estate of Gordon, 184 Minn. 217, 238 N. W. 329; 2 Dunnell, Dig. & Supp. § 3334."

This is the most recent of numerous cases which have come before us for review in which medical opinions differ as to the causal relationship between the accident and the claimed disability. We have consistently held that a conflict in the opinions of medical experts, the same as a conflict in the testimony of other witnesses, must be resolved by the Workmen's Compensation Commission as the trier of fact. Grabowski v. Great Northern Oil Co. 283 Minn. 205, 167 N. W. (2d) 14; Bruce v. Tel-E-Lect Products, Inc. 283 Minn. 142, 167 N. W. (2d) 27; Miller v. Young, Inc. 279 Minn. 273, 156 N. W.

(2d) 243; Dahlke v. Goebel, 278 Minn. 318, 154 N. W. (2d) 401; Snyder v. General Paper Corp. 277 Minn. 376, 152 N. W. (2d) 743. Respondent is allowed $250 attorneys' fees in this court.

Affirmed.