> MINNESOTA SUPREME COURT
> By ROBERT J. SHERAN
> Chief Justice

## MICHAEL H. FLAVIN v. TOTINO'S FINER FOOD AND ANOTHER.

238 N. W. 2d 433.

January 23, 1976—No. 45736.

*Mahoney, Dougherty & Mahoney, Kenneth Gleason,* and *Richard P. Mahoney,* for relators.

*Schermer, Schwappach, Borkon & Ramstead, John Mariani,* and *Richard I. Diamond,* for respondent.

SCOTT, JUSTICE.

Certiorari upon the relation of the employer, Totino's Finer Food, and its insurance carrier, Atlantic Mutual Insurance Company, for review of a Workers' Compensation Board decision awarding compensation to Michael H. Flavin.

On March 20, 1973, while the employee was working within the scope of his employment with Totino's Finer Food, he suffered an industrial injury when a pallet of boxes weighing approximately 800 pounds fell from a height of approximately 10 feet and struck him in the low back, rendering him unconscious and knocking him to the floor. He was immediately taken to Unity Hospital, treated, and released; however, he apparently had some difficulty with head and chest pains and, on his way home, his right leg became paralyzed, causing him to lose control of his car. He returned to work 1 week later to the same job, but leg and back pain and headaches caused his absence until approximately May 15. When he returned, he was assigned to a job of a less strenuous nature. After attempting a series of jobs, including those of packmaster and truck loader, he terminated his employment with Totino's on July 9, 1973, on the basis that all work had become too difficult.

Flavin commenced work for ITT Thermotech on July 15, 1973. His job essentially involved the manual manipulation of an injection molding press. There is evidence that the employee was able to perform his duties for some time at ITT without any back stiffness or soreness. Then on July 26, 1973, the employee suffered a traumatic amputation of the tip of his right middle

finger. As a result, he was unable to work for a period of 5 to 6 weeks, during which time his back apparently reverted to its earlier condition.

ITT registered respondent's back injury under the second-injury law upon his return to work after the amputation of the tip of his finger. Upon his return, employee operated the press for 2 to 3 weeks and was transferred to work as a wheelabrator operator. This involved transportation of large parts and their placement into the machine prior to the operation of the stationary drill press. He remained at this operation for a period of 3 to 4 weeks, but terminated his employment with ITT on October 9, 1973. His stated reason for this termination was "because * * * my back is so bad I can't do the work."

There is substantial medical evidence of record. The employee was initially examined by two physicians during a period commencing May 8, 1973. Although both concluded that the industrial accident at Totino's did produce contusions and a sprain in the lumbar area of the back, both expressed the opinion that, with that exception, employee exhibited a completely normal back.

However, a subsequent examination of employee on July 19, 1973, by Dr. A. Ross Lerner resulted in a diagnosis of limited leg flexion and sciatic tenderness caused by a nerve rootlet irritation at the L4-L5 level of the spine. Employee was again examined by Dr. Lerner on October 8, 1973, and on or about November 4, 1973, a lumbar myelogram revealed a midline bulge disc defect at the L4-L5 level. In March 1974, employee was diagnosed as exhibiting a ruptured disc. Two physicians concurred in the opinion that the industrial injury on March 20, 1973, was causal of the progressive and continual back problems.

In addition, there is some evidence that the traumatic amputation of the tip of the employee's finger could have caused an emotional stress to perhaps accentuate any existing condition.

By a claim petition filed October 29, 1973, employee sought temporary total disability from October 10, 1973, and continuing.

A joint answer was interposed by the employer and its insurer on February 11, 1974. A hearing was conducted before the compensation judge on May 10, 1974, at which time the relators moved to join ITT Thermotech as an additional party. This motion was denied. On June 14, 1974, the compensation judge concluded that employee sustained intermittent temporary total disability from March 20, 1973, to May 15, 1973, and from November 4, 1973, to November 9, 1973.

Upon appeal to the board, certain findings of the compensation judge were vacated, the board finding that the employee was intermittently temporarily and totally disabled for the period from March 20, 1973, to May 15, 1973, and "was further temporarily and totally disabled from October 10, 1973 to date of hearing * * *."

In a memorandum opinion accompanying its order, the board concluded that, based upon the serious nature of the original injury and the continuity of complaints from and after that time as well as the objective findings, there was a causal relationship between the employee's ongoing physical complaints and the initial injury. In an amended decision of the board, it was found that the employee did not sustain a personal injury or aggravation to the back while employed by ITT, and that rather his back symptoms were a "manifestation of the continued back problems which the employee suffered as the result of personal injury sustained March 20, 1973."

Relators acquiesce in the conclusion of the commission that employee was temporarily totally disabled from and after October 10, 1973, but contend that there is no evidence that the injury of March 20, 1973, is solely causative. Relators assert that since employee was able to engage in gainful employment subsequent to the March injury and after a healing period for his amputation, it cannot be asserted that he was temporarily totally disabled after October 10, 1973, by reason of his first injury.

Total disability, Minn. St. 176.101, has been defined for work-

ers' compensation purposes as the inability to perform substantial and material parts of some gainful work or occupation with reasonable continuity. McCrae v. Brandt Aero Service, 283 Minn. 483, 168 N. W. 2d 683 (1969); Schulte v. C. H. Peterson Const. Co. 278 Minn. 79, 153 N. W. 2d 130 (1967).

However, the case presented is similar in effect to a decision of this court holding that where the evidence, including a disclosure that the claimant was observed unconscious at the site of a 1954 industrial accident and that no comparable condition was noted at a 1960 accident site, was sufficient to support a finding that temporary total disability was neither related to nor aggravated by the 1960 industrial accident, but was solely caused by the 1954 injury, thus placing entire liability upon the shoulders of the 1954 employer. Larson v. Foley Brothers, Inc. 277 Minn. 99, 151 N. W. 2d 780 (1967).

In the instant case there is substantial evidence that the back problems of the employee initially caused by industrial accident on March 20, 1973, were continual and recurrent. An analysis of the medical testimony indicates that there were few, if any, objective signs initially, but that during the time interval, the injury had naturally progressed to the state of a ruptured disc.

This court has repeatedly applied a restrictive standard in reviewing decisions of the Workers' Compensation Board. We do not decide whether the board's decision was correct, or even preferable under the evidence, but rather, whether there was a sufficient basis of inference reasonably to be drawn from the facts. Watkins v. Walker Methodist Residence, 293 Minn. 524, 198 N. W. 2d 524 (1972); Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. 2d 67 (1956); Bennett v. Bartlett, 258 Minn. 159, 103 N. W. 2d 194 (1960). A conflict in medical testimony must be resolved by the board. McCrae v. Brandt Aero Service, *supra*; Mastellar v. Nelson Co-op. Creamery, 299 Minn. 210, 216 N. W. 2d 836 (1974).

Applying these standards to the facts of record, there is sufficient support for the board's findings that the symptoms ex-

hibited by employee were merely a manifestation of the continuing and recurrent back condition without relation to a second industrial injury.

Relators also ask this court to review the determination of the board not to join ITT Thermotech as a party on the basis discussed above. Again, there is sufficient evidence to support the finding of the board that the second injury, the traumatic amputation of a finger tip, did not produce an aggravation of a pre-existing condition so as to require this joinder.

The decision of the Workers' Compensation Board is therefore affirmed in all respects.

Respondent is allowed $350 attorneys fees on this appeal.

Affirmed.