Leland GRAPEVINE, Respondent,

v.

CITY OF WORTHINGTON, Employer,

and

Allied Mutual Insurance Company,
insurer, Relator,

Blue Cross & Blue Shield of Minnesota,
intervenor, Respondent,

and

Federated Insurance Company,
intervenor, Respondent.

No. 50421.

Supreme Court of Minnesota.

Aug. 22, 1980.

Sahr, Kunert & Tambornino and John L. Tambornino, Minneapolis, for relator.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and David A. Stofferahn, Edina, for Grapevine.

Indru S. Advani, St. Paul, for Blue Cross & Blue Shield of Minnesota.

Jardine, Logan & O'Brien and Louis Tilton, St. Paul, for Federated Ins. Co.

TODD, Justice.

Certiorari on the relation of the City of Worthington and its compensation carrier to review a decision of the Workers' Compensation Court of Appeals determining that employee, a member of the city's volunteer fire department, is temporarily totally disabled as the substantial result of a heart attack determined to have arisen out of and in the course of his employment. Although relators contend forcefully that the finding that the notice requirement of Minn.Stat. § 176.141 (1971) had been satisfied is contrary to the evidence, and also assert that a medical opinion was conjectural, we have concluded that neither claim is borne out by the record. Accordingly, we affirm.

From the record it appears that on May 19, 1973, employee, a 45–year–old electrician who had been a member of the volunteer fire department since 1956, sustained a heart attack, to which physical exertion and stress related to answering a fire alarm were a contributing cause. On that day employee, together with approximately 40 other persons including Myril Ferguson, an assistant fire chief, attended a bowling picnic. Sometime between 3 and 4 p. m. a fire alarm was sounded. All members of the fire department were expected to respond to alarms if possible, so employee immediately ran to his automobile. He found that it was hemmed in by another one, so with assistance from two other men he pushed "fairly hard" to move that vehicle out of his way. He then got into his own automobile and started for the fire station a mile and a half away. He testified that he became rather irritated when traffic impeded his progress and that he also felt typical anxiety which he always experienced in answering a fire alarm. During the drive to the fire station employee began to have chest pains. He arrived there to discover that two trucks had gone to the alarm and then decided to go home. His chest pains continued and became so severe a few hours later that Ferguson and some other members of the fire department, which also serves as a rescue squad, were called and took him to the hospital. Employee said nothing that evening about the circumstances in which his pain had developed and made no direct claim to any member of the fire department that the heart attack had been caused by his activities in responding to the alarm. By September 21, 1973, he had recovered sufficiently to return to his work as an electrician, first on a part–time and eventually on a full–time basis. His doctor would not permit him to return to work as a volunteer firefighter, however, and he experienced episodes of angina after resuming full–time work. On July 28, 1975, he suffered another heart attack. Since that time he has been unable to do any work and has had more frequent and more severe angina episodes, some requiring hospitalization.

The medical witnesses, both of whom are cardiologists, agree that employee is totally disabled, but otherwise expressed contrary views. Dr. Thomas E. Layman diagnosed employee's condition as arteriosclerotic heart disease, with evidence of two heart attacks which had resulted in a severe degree of ventricular disfunction. The doctor expressed the opinion that the activities and anxiety related to employee's attempts to get to the fire station were a direct contributing cause of the 1973 heart attack. He said also that this attack had extensively damaged the posterior wall of the left ventricle, causing the ventricular disfunction and diminishing employee's cardiac reserve by 35%, and that the scar tissue from this attack diminished the effectiveness of the pumping of the heart and made it more susceptible to angina and to subsequent heart attacks. In his view the subsequent heart attack, which damaged the anterior wall of the left ventricle, was contributed

to in part by the first attack although he could not say "with exact medical certainty" that there was a relationship between the two. He felt that the 1973 attack had contributed at least 50% to employee's disability.

Dr. John B. Murray expressed the opinions that the 1973 heart attack was not causally related to employee's physical activities of that day and that there was no direct relationship between the first heart attack and the second one, but instead that they were independent of each other.

On this evidence the compensation judge, whose findings the court of appeals adopted, found that the 1973 heart attack was a personal injury arising out of and in the course of employment, consisting of a substantial aggravation of employee's underlying coronary artery disease; that the city had actual knowledge of the injury within the meaning and requirements of § 176.141 (1971); and that employee had been totally disabled between May 21 and September 21, 1973, and continuously from September 28, 1975, to the date of the hearing. Relators' principal challenge to this decision focuses on the claimed lack of evidence to support the finding relating to the employer's actual knowledge.

■ 1. Minn.Stat. § 176.141 (1971) required that employee give written notice of an injury allegedly arising out of and in the course of employment within 90 days unless the employer had actual knowledge of its occurrence. *Kling v. St. Barnabas Hospital*, 291 Minn. 257, 190 N.W.2d 674 (1971). No written notice was given within that period, and relators argue that they did not have actual knowledge, defined in *Pojanowski v. Hart*, 288 Minn. 77, 178 N.W.2d 913 (1970), and *Greene v. W & W Generator Rebuilders*, 302 Minn. 542, 224 N.W.2d 157 (1974), as such information as would put a reasonable man on inquiry that the disability was work related. Relators urge here that employee proved only that the city and the fire department's supervisory personnel knew that the employee was taken to the hospital in the early evening of May 19, 1973, by the city's rescue squad; that employee had a heart attack; that there had been a fire call between 3 and 4 p. m.; and that he was a volunteer fireman. They insist that this information is not enough to put a reasonable man on inquiry.

Their argument has some force, partly because the firemen are volunteers and not all members respond to every alarm, and because there is no direct proof that Ferguson, the assistant chief who was at the picnic, knew that employee also was there or knew that employee attempted to respond to the fire alarm. But it is a permissible inference that Ferguson saw employee at the picnic since there were only 40 persons there. Moreover, employee testified without contradiction that all volunteer firemen were directed to come to every alarm if possible and that he had responded to as many as 100 fire alarms each year during the 17 years he had been a volunteer. It is a permissible inference that the fire chief and assistant fire chief were aware that employee was a faithful, conscientious volunteer and that it was his practice to respond to all alarms when possible. The day in question was a Saturday, so it is reasonable also to infer that they would be aware that employee's job would not have prevented him from responding to the alarm. There is no dispute that they were aware within the 90–day period required by § 176.141 (1971) that he had suffered the heart attack. We conclude that the finding that the city had actual knowledge of employee's injury, in the sense that it had information which would put a reasonable employer on inquiry as to whether the employee's disability was work related, thus must be sustained since it has sufficient basis of inference reasonably to be drawn from the facts.[1] *Saholt v. Northwest Airlines, Inc.*, 290 Minn. 393, 188 N.W.2d 772 (1971); *Flavin v. Totino's Finer Food*, 307 Minn. 111, 238 N.W.2d 433 (1976).

■ 2. Relators assert that Dr. Layman's opinion concerning the causal relationship between the two heart attacks was

1. See also Minn.Stat. § 176.011, subd. 15 (1971).

a conjecture which did not support the finding that as a substantial result of the first heart attack employee has been temporarily totally disabled continuously since September 28, 1975. Although Dr. Layman said that he could not speak with absolute certainty, he clearly expressed the opinion that employee's first heart attack resulted in damage to his heart extensive enough to have substantially diminished its effectiveness, requiring the remaining uninjured heart muscle to do more work and making it more susceptible to angina and subsequent heart attacks. His opinion was sufficiently certain to be accepted and evaluated by the trier of fact. *Boldt v. Jostens, Inc.,* 261 N.W.2d 92 (Minn.1977). It was accepted as more likely to be correct than Dr. Murray's contrary opinion in light of employee's history following the first heart attack, and we see no reason to interfere with that determination since the resolution of conflicts in the opinions of medical experts was the function of the court of appeals. *Harrison v. Schafer Const. Co.,* 309 Minn. 557, 244 N.W.2d 152 (1976).

Employee is allowed attorneys fees of $600 in this court.

Affirmed.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

OTIS, Justice (dissenting).

On May 19, 1973, the employer did not know that when its employee's symptoms occurred he was responding to a fire siren. The only information available to the city was the fact that the employee was ill and had been taken by the rescue squad to a hospital, not enough notice to place an employer on inquiry as to whether the injury was work–related. That claim was not made until some four or five years later.

We have long held that "[m]ere knowledge of disability following a traumatic injury is not sufficient [notice], for the facts and circumstances of either the disability or the injury must be such as would put a reasonable man on inquiry *that the disability is work–related.*" *Pojanowski v. Hart,* 288 Minn. 77, 81, 178 N.W.2d 913, 916 (1970) (emphasis added), quoted with approval in *Greene v. W & W Generator Rebuilders,* 302 Minn. 542, 543, 224 N.W.2d 157, 159 (1974), and in *Kling v. St. Barnabas Hospital,* 291 Minn. 257, 262, 190 N.W.2d 674, 678 (1971). *Accord Davidson v. Bermo, Inc.,* 272 Minn. 97, 101, 137 N.W.2d 567, 571 (1965); *Rinne v. W. C. Griffis Co.,* 234 Minn. 146, 47 N.W.2d 872 (1951).

This is not such a case. The employee was on his way to the fire station from a bowling picnic when he was stricken. He neither went to the scene of the fire nor assisted in any other manner. Under such circumstances to impute to the employer constructive notice of a work–related disability is to expect of the city a prescience which is neither justified by the facts nor by the law.

I would reverse.