The original opinion issued on June 7, 1989, is withdrawn, and the following is substituted therefor.
Earnest Williams filed suit against Russell Coal Company on July 7, 1987, for benefits under the workmen's compensation laws of Alabama. He claimed back injuries, occupational pneumoconiosis, and hearing loss arising out of and in the course of his employment. After a bench trial, the court entered an order which denied Williams's claims for benefits based on pneumoconiosis and hearing loss, but found that he was entitled to workmen's compensation benefits based on his back injuries. Williams was awarded a lump sum of accrued weekly benefits, future permanent partial benefits, payment of all existing and unpaid reasonable medical expenses, and attorney's fees. Russell filed a motion for new trial, which was denied. The company then perfected a timely appeal to this court from the judgment against it.
Russell argues on appeal that Williams's claims are barred by the statute of limitations, that the trial court's finding of legal and medical causation is not supported by any legal evidence, that the trial court's finding of notice is not supported by any legal evidence, that no evidence was presented which would allow Williams to recover medical expenses, and that the benefit awards should have been reduced by the attorney's fee awards. *Page 1009 
Williams did not cross-appeal the denial of his claims based on pneumoconiosis and hearing loss. We will, therefore, limit our discussion here to those facts relative to his back injuries.
Williams is presently 54 years old. He was employed by Russell as a heavy equipment operator in its strip mines, where he worked from mid-1977 until June 20, 1986. Russell closed the strip mine on that date. Williams has not been employed since then.
Williams's complaint, in pertinent part, alleges the following:
 "4. On said date [June 20, 1986] and while working within the line and scope of Plaintiff's employment and over the immediately preceding months, the Plaintiff received injuries arising out of and in the course of Plaintiff's employment under the following circumstances: the rough movement of the machines operated in the performance of the work required injured Plaintiff's back and on said date he last worked had reached such severity as to permanently and totally disable him."
The record does not reflect that Williams suffered any definitive accident on June 20, 1986. Instead, his testimony revealed that he has had back problems since on or about May 1, 1983, when he injured his back for the first time. According to Williams, he was operating a road grader when it ran over a large rock and dropped about a foot and a half. He felt an immediate burning pain in his back. He then slipped getting off the machine, which caused the pain to get worse. He was referred by his chiropractor to a neurosurgeon, Dr. Robert Q. Craddock, and subsequently underwent surgery for a ruptured disc. On December 5, 1983, he was released to his "full and usual activities," and he returned to work. All medical bills resulting from this injury were paid by group health insurance provided through the mine workers' union. Weekly disability benefits were also paid from the same source.
Dr. Craddock's records indicate that he again treated Williams for back pain in September of 1984. The doctor's notation on September 18 states that Williams said he was steadily getting worse. He responded to conservative treatment, however, and was released to return to work on October 22, 1984.
Williams testified that he suffered another back injury on the job in October of 1985. On that occasion, he was driving a water truck which hit a hole and jolted him sharply against the seat. He stated that the seat of the truck was propped up by a crosstie and that the truck had no "shocks". He experienced a burning pain in his back like the pain he had felt in 1983. He sought treatment in this instance from his family physician, Dr. A.R. Hudson. Because Williams stated that he found it difficult to work six-day weeks as a result of his pain, Dr. Hudson wrote a note to Russell advising that Williams should be excused from Saturday work for two months for medical reasons. The company refused to accept the excuse for future Saturdays. The record does not reflect any further treatment by Dr. Hudson of Williams's back problems.
We cannot determine how much time, if any, Williams lost from work immediately after this injury. The record does indicate, however, that Williams continued to work at least from mid-November of 1985 until the mine closed in June of 1986, a period of approximately seven months. He performed the same duties and worked the same schedule, including Saturdays, as he had before the accident. He did utilize sick leave and vacation time to take days off, but his personnel record does not reveal a noticeable increase in his absenteeism during that period.
One significant problem with the October 1985 injury is that the exact date on which it occurred cannot be determined from the record before us. According to Williams, it happened on the day he went to see Dr. Hudson, whose records reflect that he saw Williams on October 29. There is also evidence to indicate that Dr. Hudson wrote a medical excuse on October 29 for Williams to excuse his absence from work on October 26. There is no other evidence from which the date of the 1985 accident can be established. *Page 1010 
Williams testified at trial that he had notified Russell of this accident by telephoning Russell's purchasing agent. That testimony conflicted with statements made during his deposition that he did not report the 1985 accident to anyone. When confronted with the inconsistency at trial, he said he had misunderstood the question asked at his deposition. On the other hand, the purchasing agent testified that he had never received any report concerning an on-the-job accident from or on behalf of Williams.
The general superintendent of the mine where Williams worked stated that he knew Williams had "some back problems," but that Williams had never filed a complaint indicating that he had been hurt at work. There is a memorandum in the record dated November 5, 1985, that documents a telephone conversation the superintendent had with Dr. Hudson regarding his recommendation that Williams be excused from work on Saturdays. It states:
 "Carthell Williams [the superintendent] called Dr. Ray Hudson on this date and discussed this with Dr. Hudson. Russell Coal Company will not accept this for Earnie's being excused for every Saturday for the rest of the year. We will accept it for being excused for 10/26/85, but that is all. If Earnie is off any other Saturday, he must have an excuse for each individual Saturday." (Emphasis in original.)
Williams testified that he had also discussed his back trouble with the superintendent when he took him the excuse from Dr. Hudson.
We note that the record reflects that Williams also injured his back twice at home, although neither he nor his wife could state with any degree of certainty when these incidents occurred. Mrs. Williams's testimony indicates that one could have been in September of 1984, which coincides with Williams's visits to Dr. Craddock. The only indication of the other is a message taken by Russell when Williams requested a sick day on December 8, 1985, stating that he had fallen at home and hurt his back.
The trial court has made multiple factual determinations as to the cause of Williams's back problems, i.e., the existence of an occupational disease, a progressive deterioration of his condition caused by continuous operation of heavy equipment, and accidents resulting from his employment in May 1983 and September 1985. The trial court also found that Russell had notice of "the accident," that the statute of limitations did not begin to run on any of Williams's claims until June 20, 1986, and that none of Williams's claims was barred.
Because workmen's compensation cases come before us on certiorari, our standard of review is very narrow and does not allow us to weigh the evidence. Cook v. Munn, 528 So.2d 881
(Ala.Civ.App. 1988). Our review of the judgment in this case is limited to ascertaining whether any legal evidence or reasonable inference therefrom supports the trial court's findings of fact and whether the correct law was applied to such facts. Martin Industries, Inc. v. Dement, 435 So.2d 85
(Ala.Civ.App. 1983). If conflicting testimony is presented, the findings of the trial court will be conclusive if there is any testimony to support them. DeHart v. Ideal BasicIndustries, Inc., 527 So.2d 136 (Ala.Civ.App. 1988). With the foregoing in mind, we have reviewed each finding of the trial court relative to the cause of Williams's disability.
 Occupational Disease
At the outset, we note that we need not address any arguments concerning an occupational disease. Section 25-5-117, Ala. Code 1975 (1986 Repl.Vol.), is clear that Williams had to file his claim for an occupational disease within one year after the date of the injury. See Sims v. Union Underwear Co.,551 So.2d 1078 (Ala.Civ.App. 1989). This he did not do. Therefore, the trial court's conclusion that Williams was entitled to compensation on the basis of an occupational disease was in error.
 Gradual Deterioration
The trial court found that Williams's "work in the operation of heavy equipment *Page 1011 
before, at the time of, and after the September 1985 injury caused Plaintiff's disabling back condition from which he suffered on 6/20/86," and that the progressive aggravation of his back problems entitled him to workmen's compensation benefits. For an injury to be compensable under Alabama's workmen's compensation laws, the injury must be "caused by an accident arising out of and in the course of [the worker's] employment." § 25-5-51, Ala. Code 1975 (1986 Repl.Vol.). An "accident" is defined in § 25-5-1(8) as "an unexpected or unforeseen event, happening suddenly and violently . . . and producing at the time injury to the physical structure of the body." Gradual deterioration cannot constitute an "accident" under our workmen's compensation act. Buchanan Lumber Co. v.Edwards, 531 So.2d 1 (Ala.Civ.App. 1988).
 1983 Accident
We need not address the trial court's determination that Williams sustained an accident as defined above in May 1983 and that Russell had notice thereof. At the time of the 1983 injury, § 25-5-80, Ala. Code 1975, provided a one-year statute of limitations for the filing of an action for workmen's compensation benefits, which began to run from the date of the injury. City of Florence v. Gallien, 484 So.2d 1095
(Ala.Civ.App. 1986). We are satisfied that Williams cannot now be allowed to assert claims based on that injury. We note that the evidence clearly supports the trial court's finding that Williams fully recovered from that alleged accident.
 1985 Accident
Initially, we do not find any evidence that this alleged accident occurred in September. Williams did miss work in September due to illness, but his personnel records indicate that he was suffering from "chills." He did not see Dr. Hudson in September. As previously discussed, we cannot tell on what date the incident described by Williams occurred, but the record indicates that it happened on either October 26 or October 29, 1985.
We must now look at the issues raised by Russell as they specifically apply to the 1985 accident.
 I.
We find that the statute of limitations in § 25-5-80 does not bar Williams's claim as to this accident. Effective February 1, 1985, the statute of limitations under this section for accident claims was increased to two years. § 25-5-80, Ala. Code 1975 (1986 Repl.Vol.). Since Williams filed his claim on July 7, 1987, he was clearly within the requisite time period.
 II.
An employee must meet two tests of causation — legal and medical — to establish his entitlement to workmen's compensation benefits. Gold Kist, Inc. v. Pope, 539 So.2d 291
(Ala.Civ.App. 1988). To establish legal causation, the employee must show that he was exposed to a risk or hazard to which he would not have been exposed had he not been performing his job. Gold Kist, Inc. v. Pope, supra. We find that Williams's description of his injury in the water truck at the mine was sufficient to establish legal causation. To establish medical causation, the employee must show that the hazard or risk to which he was exposed was, in fact, a contributing cause of his injury. Fordham v. Southern Phenix Textiles, Inc.,387 So.2d 204 (Ala.Civ.App.), cert. denied, 387 So.2d 206 (Ala. 1980). There was no medical testimony relative to the 1985 accident; however, the Supreme Court of Alabama recently held that the testimony of doctors is not required in order for a trial court to find medical causation. Ex parte Price, [Ms. 87-1457, February 17, 1989] (Ala. 1989). Whether the employee has satisfied the test set out in Fordham, supra, in the absence of medical testimony must be determined on a case-by-case basis. Price, supra. Our function at the appellate level is to review whether the totality of circumstances of this case supports the trial court's finding of medical causation. Price, supra. Applying the attendant presumptions, we cannot *Page 1012 
say that the trial court was incorrect in so finding.
 III.
Section 25-5-78, Ala. Code 1975 (1986 Repl.Vol.), states:
 "Every injured employee or his representative shall, within five days after the occurrence of an accident, give or cause to be given to the employer written notice of the accident, and the employee, if he fails to give such notice, shall not be entitled to physician's or medical fees nor any compensation which may have accrued under the terms of this article and article 2 of this chapter, unless it can be shown that the party required to give such notice had been prevented from doing so by reason of physical or mental incapacity, other than minority, fraud or deceit, or equal good reason, but no compensation shall be payable unless such written notice is given within 90 days after the occurrence of the accident or, where death results, within 90 days after the death."
This section enables an employer to make a prompt examination, provide proper treatment, and protect itself against simulated or exaggerated claims. Gold Kist, Inc. v. Dumas, 442 So.2d 115
(Ala.Civ.App. 1983).
Williams's failure to provide written notice is uncontroverted, but there is some evidence, albeit slim, that he gave oral notice. Oral notice which places the employer on notice that an accident has occurred and that an injury resulted is sufficient to satisfy the requirements of this statute. Gold Kist, Inc. v. Dumas, supra. We do not address the question of whether Williams's testimony that he telephoned Russell is adequate evidence of oral notice, however, because there is also evidence from which the trial court could have found that Russell had actual notice of the accident aside from any oral notice by Williams. Written notice is also not required if it is shown that the employer has actual knowledge of the injury. Stinson v. Liberty Mutual Ins. Co.,395 So.2d 1032 (Ala.Civ.App. 1981).
The Supreme Court of Alabama has stated that the aim of actual notice is "to advise the employer that a certain employee, by name, received a specified injury in the course of his employment on or about a specified time, at or near a certain place specified." Baggett v. Builders Transport, Inc.,457 So.2d 413, 415 (Ala.Civ.App. 1984) (quoting Ex parteStith Coal Co., 213 Ala. 399, 400, 104 So. 756, 757 (1925)). Once the employer has actual notice, it is thereby provided the opportunity presented by statutory notice to investigate the accident in order to protect itself against simulated or exaggerated claims. Beatrice Foods Co. v. Clemons, 54 Ala. App. 150, 306 So.2d 18 (1975). Our research has not revealed, however, any Alabama cases which squarely address the question of what constitutes actual notice on the part of the employer. We have, therefore, turned to Minnesota caselaw, as Minnesota's construction of workmen's compensation law serves as a source of persuasive authority in situations where Alabama law offers no guidance. Buchanan v. Pankey, 531 So.2d 1225
(Ala.Civ.App. 1988).
Actual knowledge is defined in the case of Pojanowski v.Hart, 288 Minn. 77, 81, 178 N.W.2d 913, 916 (1970), as follows:
 " 'Actual knowledge' is knowledge of such information as would put a reasonable man on inquiry. * * * Mere knowledge of disability following a traumatic injury is not sufficient, for the facts and circumstances of either the disability or the injury must be such as would put a reasonable man on inquiry that the disability is work-related."
The fact that an employer is aware that an employee has pain or a medical problem is not, by itself, sufficient to charge the employer with actual knowledge. Issacson v. Minnetonka, Inc.,411 N.W.2d 865 (Minn. 1987). If, however, the employer has some information connecting work activity with an injury, it may be put on reasonable notice to investigate further. Greene v. W W Generator Rebuilders, 302 Minn. 542, 224 N.W.2d 157 (1974).
The trial court's finding that Russell had actual notice of Williams's accident *Page 1013 
in 1985 was based on Williams's testimony that he discussed with the mine superintendent the reason for his request that he be allowed to take Saturdays off and on the evidence that the superintendent talked with Williams's doctor about the problem. The court's order also stated that the superintendent and other Russell personnel "were familiar, not only with [Williams's] back problems, but also the nature of the job which he was doing and the stress on Plaintiff's back resulting from the performance of his job." We cannot say that the trial court was wrong in inferring from this evidence that Russell had actual knowledge that Williams was injured at the mine in October of 1985. It is at least a permissible inference to conclude that Russell had information which would put a reasonable employer on inquiry as to whether Williams's disability was work related. Grapevine v. City of Worthington, 302 N.W.2d 2
(Minn. 1980).
There is no indication in the record, however, of the date on which notice was given to or acquired by Russell. This is important because § 25-5-78 specifies two time periods with respect to notice. The employee must provide notice within five days to avoid a forfeiture of accrued benefits, unless he can show "good reason" for his failure to comply. Ex parte Murray,490 So.2d 1230 (Ala. 1984). If there is no good reason for the failure of the employee to notify his employer within five days, but the employer receives actual notice within 90 days after the injury, then the employee must forfeit only those payments accrued up to the time of notification. Ex parteMurray, supra.
We cannot determine, and the trial court's finding does not specify, the date on which notice was given. This problem is compounded by our inability to determine the date of the accident. We must, therefore, remand this cause to the trial court with instructions to ascertain both dates. If Russell received notice within five days, then any compensation which may be due may be awarded from the date of the accident. If notice was not given within the five-day period, we do not find any evidence to support a "good reason" for noncompliance with the five-day provision. In that event, as long as Russell had actual notice within 90 days, any award of compensation must be entered from the date of notice forward. Ex parte Murray,supra.
On remand, if the trial court finds compliance with the notice provisions of § 25-5-78 within the 90-day period, the court is then directed to redetermine its award of benefits. Specifically, the court must evaluate whether Williams suffered a loss of ability to earn in light of the fact that he continued to work after the 1985 accident. Permanent partial disability can be awarded when there is a showing in fact that an employee sustained a decrease or loss in his ability to earn, but the employee bears the burden of proving that he has incurred a loss of earning capacity. Coan v. Lawrence CountyCommission, 537 So.2d 937 (Ala.Civ.App. 1988). An employee's actual post-injury earnings create a presumption of earning capacity commensurate with them, but that presumption may be rebutted by evidence which proves that those post-injury earnings are an unreliable basis for estimating earning capacity. All American Homes of Alabama v. Nichols,523 So.2d 431 (Ala.Civ.App. 1988). If Williams performed the same job after the 1985 injury as he did before for the same wages or higher, a finding that he suffered a reduction in earning capacity is not necessarily precluded, but he must rebut the presumption that he did not sustain a loss of ability to earn.
 IV.
Russell also contends that Williams should be precluded from recovering medical expenses because he failed to present any evidence that they were reasonable, necessary, or directly related to the accident. We agree. The record reflects that no "existing and unpaid" medical expenses were introduced into evidence, and that there was no testimony presented regarding the amount sought, much less any proof that any such charges were reasonable. Where there is no evidence that a medical charge is reasonable, there is no *Page 1014 
basis for awarding a judgment on the charge in a workmen's compensation case. Reasonableness of such charges is not a matter of common knowledge. Carroll Construction Co. v.Hutcheson, 347 So.2d 527 (Ala.Civ.App. 1977). No evidence whatsoever was presented in this case about Williams's existing and unpaid medical expenses. That portion of the trial court's judgment requiring Russell to pay those expenses is due to be reversed.
 V.
The final issue presented to us by Russell concerns the award of attorney's fees. Russell contends that the trial court's judgment is incorrect because it fails to reduce either the accrued lump sum benefits or future compensation benefits by the attorney's fee awards. Section 25-5-90, Ala. Code 1975 (1986 Repl.Vol.), clearly mandates that the employee is to be entirely responsible for the payment of attorney's fees; therefore, the benefits awarded to Williams must reflect a reduction to account for the payment of attorney's fees. Russell is correct that the judgment does not state that Williams's award of accrued weekly benefits must be reduced by the amount of attorney's fees awarded relative thereto. The trial court did make such a reduction as to the future benefit award, but directed that the amount be paid in a lump sum by Russell and "deducted from the far end of its weekly liability." According to Ex parte St. Regis Corp.,535 So.2d 160 (Ala. 1988), that method of deduction is incorrect.
We understand St. Regis to set out the following instructions: The periodic monthly payment award must be reduced to present value. Only then can attorney's fees be calculated. Next, the present value of the fees should be deducted from the present value of the aggregate of the payments. Once the present value of the compensation has been reduced by the fee award, the reduced amount of the compensation should then be used to calculate the amount of the weekly benefits to which the employee is entitled.
On remand, if the trial court determines that Williams is entitled to compensation, any award of attorney's fees must then be computed in accordance with the instructions set out above.
The trial court's judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH DIRECTIONS.
ROBERTSON and RUSSELL, JJ., concur.