On January 26, 2000, A C Air Conditioning and Heating, Inc. ("A 
C"), sued its employee, Jimmy Cleckler, pursuant to § 25-5-88, Ala. Code 1975, in the Circuit Court of Shelby County, seeking a determination as to whether the injuries alleged to have been sustained by Cleckler during the course of his employment with A C were compensable. On that same date Cleckler sued A C in the Circuit Court of Jefferson County, Bessemer Division, seeking to recover workers' compensation benefits for injuries he alleges he sustained during the course of his employment with A C. Cleckler also alleged that he was terminated from his employment in retaliation for his having filed a workers' compensation claim, in violation of § 25-5-11.1, Ala. Code 1975.
On February 3, 2000, Cleckler moved to have A C's Shelby County action transferred to Jefferson County. On February 7, 2000, A C filed its motion in opposition to Cleckler's motion to transfer. The trial court entered an order denying Cleckler's motion to transfer on March 6, 2000.
On May 9, 2000, A C moved to have Cleckler's workers' compensation claim and the retaliatory-discharge claim severed. On October 10, 2000, the trial court conducted an ore tenus proceeding to determine whether Cleckler's injuries were compensable. At the conclusion of the ore tenus proceeding, the trial court granted A C's motion to sever the workers' compensation claim and the retaliatory-discharge claim.
Thereafter, on October 25, 2000, the trial court entered the following order:
 "Defendant, Jimmy Cleckler (hereafter referred to as `Cleckler') became employed with the Plaintiff (hereafter referred to as A C Air Conditioning) around May of 1999 as a project manager. Cleckler's duties were not specifically delineated and he did a number of things in addition to being in charge of particular project[s].
 "On September 10, 1999, at approximately 10:30 a.m., Cleckler was involved in an automobile accident which he claims was while he was on the job and in the line and scope of his employment. *Page 832 
 At the time of the accident, Cleckler testified he was going on several errands. He was going to deliver a credit application to Alabama Graphics. He was also going to the Dodge Room where blueprints were done and to Dino's Hot Dogs [restaurant] where he was going to deliver a proposed service contract. If Cleckler's testimony were true, this would put him in the line and scope of his employment when the accident occurred. The Court does not find Cleckler's testimony credible for the following reasons:
 "1. Cleckler admitted he did not tell the truth at his deposition in regard to some of his testimony.
 "2. Nancy Johnson, who is Vice President and Office Manager with AC Air Conditioning, sent the aforesaid credit application to Alabama Graphics on September 9, 1999, the day before the accident. Mrs. Johnson did not ask Cleckler to drop off the credit application.
 "3. Alex Gulas, the owner of Dino's Hot Dogs did not speak to Cleckler about a service contract.
 "Accordingly, it is the Court's findings and it is ORDERED, ADJUDGED, DECREED and DECLARED by the Court that Defendant, Jimmy Cleckler's injuries sustained in his vehicular accident of September 10, 1999, did not arise out of and during the course of his employment with A C Air Conditioning and that Jimmy Cleckler is not entitled to benefits under Alabama's Workers' Compensation Act.
 "This being the Court's Order, the remaining claims of Plaintiff are DENIED."
On November 3, 2000, the trial court clarified that it had denied Cleckler's retaliatory-discharge claim because it found that Cleckler's injuries did not arise out of and in the course of his employment with A C. Cleckler appeals.
This case is governed by the 1992 Workers' Compensation Act. This Act provides that an appellate court's review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262,268 (Ala. 1996), quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012,1014 (Ala.Civ.App. 1995).
Cleckler argues on appeal that the trial court erred in finding that his automobile accident did not arise out of and in the course of his employment with A C. Specifically, he argues that the undisputed evidence indicates that his accident occurred during business hours and while he was driving a truck provided by A C; therefore, he argues, his accident occurred during the course of his employment with A C.
For an injury to be compensable, it must be "caused by an accident arising out of and in the course of" the employee's employment. §25-5-51, Ala. Code 1975. This court has stated: *Page 833 
 "`Arising out of' means that `the employment was the cause and source of the accident.' Gold Kist, Inc. v. Jones, 537 So.2d 39, 41 (Ala.Civ.App. 1988). `In the course of' means that the injury occurs within the span of the employment at a place where it is reasonable to expect the employee to be and while the employee is reasonably fulfilling the duties of his or her employment or is engaged in some activity incidental to it. Moesch v. Baldwin County Elec. Membership Corp., 479 So.2d 1271 (Ala.Civ.App. 1985)."
Meeks v. Thompson Tractor Co., 686 So.2d 1213, 1215-16 (Ala.Civ.App. 1996). "[I]f an employee deliberately and substantially deviates from his or her employment, any injury that occurs during the substantial deviation is not a compensable injury, because the injury does not arise out of and in the course of the employment." Id. at 1216. Further, this court has stated:
 "[A] trial court's factual findings based upon conflicting ore tenus evidence will not be disturbed on appeal unless such findings are `clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.' American Petroleum Equipment v. Fancher, 708 So.2d 129, 132 (Ala. 1997). It is the duty of the trial court, which has the opportunity to observe witnesses and their demeanor, and not the appellate court, to weigh the evidence presented. Webb Oil Co. v. Holmes, 660 So.2d 1316 (Ala.Civ.App. 1995)."
Lindsey v. Watson Van Lines, 722 So.2d 774, 776 (Ala.Civ.App. 1998). Additionally, "[i]n determining the weight to be accorded a witness's testimony, the trial court, as the sole judge of the credibility of a witness, considers the demeanor and the `apparent candor or evasiveness' of the witness." Reid v. Flournoy, 600 So.2d 1024, 1026 (Ala.Civ.App. 1992), quoting Brown v. Brown, 586 So.2d 919, 921 (Ala.Civ.App. 1991).
Cleckler was employed by A C in May 1999 as a project manager. Although Cleckler had no specifically delineated job duties, he performed a number of tasks for A C, including supervising jobsites, transporting materials to jobsites, meeting with builders, soliciting business, preparing blueprint "takeoffs," and running errands "generally [wherever he] needed to go." Cleckler stated that he had no "in and out sheet." Cleckler was provided a company truck by A C, which he was driving at the time of the accident that is the basis of this case. Cleckler testified at trial that Steve Johnson, the president of A C, "told [him] it was [his] truck and [he] could take it and drive it where [he] wanted to and when [he] wanted to." Cleckler stated that he drove the truck home and that he "pretty much drove it at [his] own will."
On September 10, 1999, Cleckler was involved in an automobile accident at approximately 10:30 a.m., during his normal working hours. In a deposition taken before trial, Cleckler testified that on the morning of the accident, Bryan Brown, a co-worker and relative, arrived at his house at about 6:15 a.m. and rode to work with him. Cleckler stated that he arrived at A C at about 7:00 a.m. Cleckler testified that he remained at the A C office until 9:00 a.m. and that he had no recollection of what he did while he was in the office at this time.
Cleckler testified in his deposition that he left the A C office, intending to go to Alabama Graphics to purchase a scale ruler for Brown,[1] then to the Dodge Room to *Page 834 
look at blueprints,[2] and then to Dino's Hot Dogs restaurant to deliver a service contract proposal to the owner Alex Gulas. However, Cleckler testified at trial that in January 2000, before his deposition, he had told A C's attorney that his purpose for going to Alabama Graphics was to deliver a credit application. Cleckler further stated at trial that he could not recall whether he had been instructed by Steve Johnson to deliver the credit application. Nancy Johnson, the vice president and office manager of A C, testified at trial that she completed the credit application in question on September 8 and mailed it on September 9, the day before Cleckler's automobile accident. She stated that she did not ask Cleckler to deliver the credit application to Alabama Graphics at any time.
The record indicates that Cleckler had been to Alabama Graphics on previous occasions for the benefit of A C. As mentioned above, Cleckler stated in his deposition that on the day of the accident he went to Alabama Graphics to purchase a scale ruler. He reaffirmed this testimony at trial. Cleckler testified at trial that Brown had asked him to purchase the scale ruler. The following colloquy occurred:
 "Q. Getting back to the scale ruler, you said that [Brown] asked you to pick one up. He wasn't on a job that day that required a scale ruler, was he?
 "A. No, but he was helping me at night do takeoffs at home. And I stopped to pick him up a scale ruler so he could help me do it. Because I didn't just work from 7:00 to 3:30, I took blueprints home and worked at night.
 "Q. Part of Bryan Brown's job wasn't to do takeoffs, was it?
"A. No.
 "Q. That wasn't part of his job. If he was at home helping you, that was something on his own time, wasn't it?
"A. Right.
 "Q. If you were teaching him something, how to work with a scale ruler, that doesn't have anything to do with his job at A C Air Conditioning, did it?
"A. No.
 "Q. So you were going over there on a personal errand to pick that up for him, weren't you?
"A. I wouldn't really call it personal, no.
 "Q. Well, it wasn't for doing scale work at A C Air Conditioning, was it?
"A. No, I guess not."
Brown was employed as a duct installer with A C and he stated that his job duties did not include preparing takeoffs. Brown testified in an earlier affidavit that he told Cleckler he was having trouble "on the job and needed a scale ruler to complete the work." Brown also testified in his affidavit that Cleckler purchased the scale ruler and gave it to him later that night following the accident and that he "used it on the job [he] was working on at the time." Brown testified at trial that at the time of the accident he was working on a residential jobsite that did not have blueprints, and, therefore, did not require a scale ruler and that he had no use for the scale ruler. Upon questioning by Cleckler's attorney at trial, Brown stated that he needed the scale ruler to work on a set of blueprints that he and Cleckler were working on at night for an A C project. *Page 835 
Brown also testified that he called Cleckler on the radio the morning of the accident and told him that he needed his help on the jobsite. Brown stated that Cleckler told him he could not come at the time because he was on his way to the Dodge Room. Brown stated that he found out later that day that Cleckler had been involved in an accident.
Cleckler testified at trial that after leaving Alabama Graphics he was on his way to the Dodge Room and he then intended on delivering the service proposal to Gulas at Dino's Hot Dogs. Cleckler stated that the automobile accident occurred while he was on his way to the Dodge Room at a point between it and Alabama Graphics. Located next door to Dino's Hot Dogs is O'Carr's Restaurant, which is owned by Cleckler's in-laws. Cleckler's wife is employed at O'Carr's. Cleckler testified that Dino's and O'Carr's are located approximately two to three miles from the scene of the accident. Following the accident, Cleckler telephoned his wife to take him to the hospital because she was "just right up the road at O'Carr's."
Cleckler testified at trial that A C had performed some work at Dino's Hot Dogs a few days before the accident. Cleckler testified that he was a frequent customer of Gulas's and that they often discussed heating and air conditioning. Cleckler stated that he had known Gulas for 10 to 15 years. Cleckler testified that his purpose for going to Dino's Hot Dogs was to deliver a service contract proposal to Gulas so that Gulas's son could review it. Cleckler testified that after the accident he telephoned Gulas to inform him that he had been involved in an automobile accident and that he would not be able to deliver the service contract proposal that day. Cleckler testified that Gulas said he was interested in the service proposal contract and that he could just bring it by later.
However, Gulas testified in his affidavit, which was read into evidence at trial, that he never asked Cleckler to deliver a service contract proposal to him and that he had no knowledge that Cleckler was to deliver a service contract proposal to him on the day of the accident. Gulas further testified that before the day of the accident, he had specifically told Cleckler that he was not interested in a service contract with A C. Finally, Gulas stated that Cleckler did not contact him on the day of the accident and inform him that he had been involved an accident and that he would be unable to deliver the service contract proposal.
Steve Johnson testified that the job on which Brown was working on the day of the accident did not require Brown to use a scale ruler. Johnson further testified that he had no knowledge that Gulas had requested a service contract proposal and that he had not asked Cleckler to deliver one to Gulas. Johnson also stated that on previous occasions he had tried to reach Cleckler on the company radio and could not "find him at all." Johnson never disciplined or reprimanded Cleckler for being unreachable on these occasions.
The trial court stated in its order that if Cleckler's testimony regarding the events on the day of the accident were true, his actions would have been in the course of his employment with A C and his injuries would, therefore, have been compensable. The court, however, did not find Cleckler's testimony credible and determined that his injuries did not arise out of and in the course of his employment with A C. The record indeed reveals inconsistencies in both Cleckler's and Brown's testimony regarding the events on the day of the accident. The trial court's decision simply boiled down to an issue of credibility, and it is the trial court who as the sole judge of a witness's credibility is *Page 836 
charged with the duty of determining the weight to be accorded the testimony. Reid, supra. Accordingly, we cannot say that the trial court erred in determining that Cleckler's injuries did not arise out of and in the course of his employment with A C.
Cleckler also argues that the trial court erred in dismissing his retaliatory-discharge claim. We agree. The trial court conducted an ore tenus proceeding in this case on October 10, 2000. The sole issue before the court on that date was the compensability of Cleckler's injuries. Following the hearing, the trial court granted a motion to sever, which had been pending on Cleckler's retaliatory-discharge claim. However, in its final order of October 25, 2000, the trial court summarily dismissed Cleckler's retaliatory-discharge claim, because it found that Cleckler's injuries did not arise out of and in the course of his employment with A C.
Section 25-5-11.1, Ala. Code 1975, provides, in part: "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits. . . ." An "`employee may establish a prima facie case of retaliatory-discharge by providing that he was "terminated" because he sought to recover worker's compensation benefits, which would be an impermissible reason.'" Rothenberger v. CastProds., Inc., 716 So.2d 1220, 1222 (Ala.Civ.App. 1997) (citation omitted). There is no requirement that an employee be successful in his claim for workers' compensation benefits, only that he instituted or maintained an action to recover benefits. Accordingly, we conclude that the trial court erred in dismissing Cleckler's retaliatory discharge claim because it had determined that his underlying compensation claim was not compensable.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Crawley and Murdock, JJ., concur.
Thompson and Pittman, JJ., concur in the result.
[1] A scale ruler is used to convert a blueprint diagram to feet. Such a conversion is known as a "takeoff" on a blueprint.
[2] The Dodge Room is where blueprints of various projects are maintained for review and bid. Cleckler would visit the Dodge Room and review the blueprints on a "consistent basis."