Premdor Corporation appeals from a judgment entered by the Marion Circuit Court in favor of Renelda K. Jones finding that Jones was permanently totally disabled as a result of an injury she sustained in the course of her employment with Premdor.
Jones began working for Premdor in October 1996. In the spring of 1999 Jones became a buggy loader at Premdor's plant; a buggy loader loads pieces of wood used in the manufacturing of doors into carts and pushes the carts to another work station. A fully loaded cart could weigh up to 2,200 pounds, and, by her estimation, Jones had to push the carts approximately 50 feet. Jones contended that on May 9, 2000, she injured her lower back while pushing one of the carts. She admitted that she did not inform her supervisor of the injury, but she claimed that approximately one hour after she sustained the injury she informed plant manager Larry Cagle, who happened to be walking through the plant, that she had hurt her back.
Premdor has a policy that states that if an employee sustains a job-related injury, "it is imperative that [the employee] contact [his or her] supervisor immediately." The supervisor would then fill out paperwork on the injury for workers' compensation purposes. Jones admitted to being aware of the policy, and evidence was introduced showing that she had followed the policy on two previous occasions when she had sustained workplace injuries to a *Page 1150 
foot and an elbow. No paperwork was filled out regarding Jones's lower-back injury at any time before the filing of this action by Jones.
Jones testified that on May 6, 2000, the Saturday before the Tuesday on which she allegedly sustained the workplace injury at issue, she was mowing the grass at her mother's house. Jones stated that, "just as I started to mow . . ., I felt a sharp pain, and I hadn't done anything really yet." However, she also testified in response to questions from her attorney that she "[got] over the grass pain before the Premdor pain" and that her back felt fine on May 9 before she started pushing the cart that allegedly caused her injury. Id.
Following the alleged injury on May 9, Jones finished her shift and went home. In the early morning of May 10, 2000, Jones was taken to Carraway Northwest Medical Center's emergency room by her husband because of her complaints of intense back pain. Jones was referred that day to her family physician; however, because her family physician was unavailable, she was seen by another doctor, Dr. Miller, for evaluation. Dr. Miller recommended that Jones see Dr. Palmer, a chiropractor. On May 15, 2000, Jones was seen by Dr. Palmer's partner, Dr. Marino, who cleared her to return to work on light duty for a day starting on May 22, followed by a resumption of her regular duties the following workday. Jones claimed that she reaggravated the injury on May 23 and that she told her supervisor, Kenny Price, that she had hurt her back. Price testified that Jones never informed him that she had injured her back at any time.
Jones left work that day and again visited Dr. Marino; he did not take Jones off work, but he did refer her to Dr. Jeffrey Long. Dr. Long diagnosed Jones with a lumbar sacral sprain, but he did not take her off work. Jones returned to work on May 25, and she worked for two weeks without reporting any other injuries to her supervisor or to anyone else. On June 6, 2000, Jones was unable to get out of bed because of pain in her back, and, thus, she did not go to work. She called Premdor and reported that she was feeling hurt and would not be reporting to work that day. Jones visited her family physician, Dr. Gary Fowler, two days later on June 8. Dr. Fowler took Jones off work for a few days; Jones had a note from Dr. Fowler relieving her of work duty delivered to Premdor by her daughter. By Jones's own admission, this note and subsequent notes from doctors did not reference an on-the-job injury.
On June 12, 2000, Jones visited Dr. Leslie Fowler, an orthopedic surgeon who had previously treated Jones for her foot problems. Dr. Fowler referred Jones to Dr. Bryan Givhan, a neurosurgeon; however, before the date of that appointment, Jones visited Carraway Northwest Medical Center's emergency room on July 12, 2000. On July 28, 2000, Jones visited Dr. Chester Boston, another orthopedic surgeon, on referral from Dr. Gary Fowler. After three visits, Dr. Boston released Jones to return to work without any restrictions; however, Jones did not return to work. During this same time, Jones was also being seen by Dr. Leslie Fowler for her foot problems and, on August 21, 2000, Dr. Fowler performed surgery on Jones's left foot to remove a bunion. Jones was excused from work for the surgery.
On September 7, 2000, Jones finally visited Dr. Givhan based on the referral from Dr. Leslie Fowler. Jones visited Dr. Givhan three times, with the last visit occurring in late October or early November 2000. On the third visit, Dr. Givhan released Jones to return to work without placing any restrictions on her. *Page 1151 
Jones testified that during her treatment with Dr. Givhan she went to the Premdor plant with her next-door neighbor, Carol Guyton, and informed the general manager of Premdor, Willie Hilliard, that she had injured her back on the job while pushing one of the carts. She testified that Hilliard told her that she would have to prove her claim. Guyton testified that she accompanied Jones to Premdor and as to the substance of Jones's conversation with Hilliard; she was unable to recall when the conversation took place beyond stating that it occurred either at the end of 2000 or the beginning of 2001.
Following her treatment by Dr. Givhan, Jones was next seen by Dr. Farouk Raquib, another neurologist, on November 28, 2000, and December 13, 2000. Finally, Jones was treated by Dr. David Longmire, a neurosurgeon, starting on February 14, 2001. Jones testified that Dr. Longmire restricted her from returning to work on a permanent basis due to her back injury; however, in his deposition, Dr. Longmire stated that he did not place any restrictions on Jones. Jones admitted that, aside from her belief that Dr. Longmire had placed her on work restrictions, none of the other doctors she had visited had permanently restricted her from returning to work.
Jones filed her initial complaint for workers' compensation benefits on April 2, 2001, alleging that she had been injured while working at Premdor on June 6, 2000. Glenda Peak, Premdor's payroll clerk, testified that this complaint was the first notice she received that Jones was claiming workers' compensation benefits for a back injury. She testified that ordinarily the payroll department is informed of such claims through paperwork filed by an employee's supervisor immediately following an accident. Jones filed an amended complaint on July 9, 2001, alleging that she had been injured on May 9, 2000, while on the job. The case proceeded to trial on February 20, 2002. On August 12, 2002, the trial court entered a judgment in favor of Jones, finding that she had sustained a back injury on May 9, 2000, which was "the result of an accident arising out of and in the course of her said employment" with Premdor. The trial court further found that Premdor had "received proper notice of said injury and accident within the time required by law" and that Jones thereafter received medical treatment for the injury with Premdor's knowledge. The trial court concluded that Jones had sustained a 100% permanent total disability that prevented her from obtaining other gainful employment. Premdor appeals.
Premdor first argues that the trial court's finding that Jones's injury occurred on the job is not supported by substantial evidence and is against the great weight of the evidence. Section 25-5-81(e)(2), Ala. Code 1975, states that "[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." "`Substantial evidence' is defined as `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Edwards v. Kroger Co.,681 So.2d 223, 225 (Ala.Civ.App. 1996) (quoting West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Further, as this court has stated, "`[A] trial court's factual findings based upon conflicting ore tenus evidence will not be disturbed on appeal unless such findings are "clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence."'" Cleckler v. A C AirConditioning Heating, Inc., 820 So.2d 830, 833 (Ala.Civ.App. 2001) (quoting Lindsey v. Watson Van Lines, *Page 1152 722 So.2d 774, 776 (Ala.Civ.App. 1998), quoting in turn AmericanPetroleum Equip. v. Fancher, 708 So.2d 129, 132 (Ala. 1997)).See also Bethea v. Bruno's, Inc., 741 So.2d 1090, 1092
(Ala.Civ.App. 1999).
Premdor's argument centers on the evidence presented of the various doctors' evaluations of Jones. As was recounted above, Jones's first medical visit following her injury was to the Carraway Northwest Medical Center's emergency room. The medical report from that visit states that Jones complained of "back pain [which] started on Monday [May 8, 2000]," and that it became worse during the night. It also states that she "denies injury." Jones testified that she did not say that to the emergency-room personnel and that she "did not know what [the doctor] was writing." She stated that she told the doctor that she "had mowed the grass on Saturday and that [she] had had a few twinges, but [she] had had those before but they went away." Id.
Dr. Miller's notes from Jones's visit to him on the same day, May 10, 2000, state: "A 44[-year-old white female] comes in today complaining of low back pain, right worse than left. She does not realize anything that she has done. Sort of woke up with it and it began hurting." Jones denied that she told Dr. Miller that she did not know what had caused the injury.
During her visit to Dr. Marino on May 15, Jones filled out a patient injury form. In the space asking the patient to describe when and how the accident happened, the following is written: "I was mowing the grass with a push-mower. My back started hurting really bad. 5/6/00. Woke Monday [with] pain but worked." Jones explained this notation by stating that the handwriting was not hers; she stated that she was stopped before she had completed filling out the paperwork Dr. Marino's personnel had given her and that she did not know what Dr. Marino had written. However, Jones did acknowledge that she had signed the form containing the above description of her injury. Id.
Jones visited Dr. Long on May 23, the day that Jones alleged that she reaggravated the back injury. His notes recount the following history of the injury: "Injured back 2 weeks ago while mowing the lawn, has been to chiropractor for treatment for 1 week, was on light duty but was lifting more than usual today and the pain got worse. Also was treated in ER in Winfield with onset of injury."[1]
Dr. Leslie Fowler's notes for Jones's visit to him on June 12, 2000, do not reference whether the injury was work related; they simply state: "Ms. Jones is in today for evaluation of a problem involving her back. She states she injured her back several weeks ago and has been seen by a chiropractor and medical physician since that time."
Also, as recounted above, Jones visited Carraway Northwest Medical Center's emergency room on July 12, 2000. The form that Jones filled out on that date contained a space requesting that the patient explain how the injury occurred and when it occurred. In that space Jones wrote: "Back — don't really know [how it was injured]. 6-5-00." Jones acknowledged in her testimony that the handwriting on this form was hers, but she stated that she gave the emergency-room doctor the form and told him she needed to explain what she had written. She testified that when the doctor asked her to explain it, she "told him about the lawn mower and my job."
Paperwork documenting Jones's visit to Dr. Boston on July 28, 2000, indicates that *Page 1153 
she was visiting because of "back pain" due to an injury that occurred on June 5, 2000, at "home." Jones explained those entries by stating that "I put down [June 5 because] that was my last day I worked, but I explained to [Dr. Boston] what I had done in May, but I didn't write it down."
Similarly, Dr. Givhan's report for Jones's visit to him on September 7, 2000, states:
 "Ms. Jones is a 45-year-old white female referred to me by Dr. Les Fowler for evaluation of back pain. This patient has got a history of back pain which began after lifting a lawn mower at home in May of 2000. She subsequently recovered from this and returned to work doing a job which requires a significant amount of heavy lifting and had severe recurrence of pain radiating in her back and down her left leg."[2]
Jones visited Dr. Raquib on two occasions. His notes recounting the first visit on November 28, 2000, state, in pertinent part, that Jones complained of "low back pain which started following an injury at work 6/6/00."
Dr. Longmire stated in his deposition that Jones explained the injury to him in the following fashion:
 "She described her chief complaint [as] being one of lower back pain, and she stated that the time of onset was April of 2000, and that she had been mowing her lawn on a Saturday, and then the following Tuesday when she was at work she pushed a heavy buggy, and that her back, quote, unquote, `locked.'"
Premdor contends that the evidence regarding where Jones sustained her back injury weighs heavily against finding that it occurred at work. Only two doctors, Dr. Raquib and Dr. Longmire, gave any indication that Jones had told them the injury occurred at work; evidence from the other nine medical-care providers either did not indicate how the injury occurred, indicated that Jones had said she did not know how the injury occurred, or indicated that Jones had recounted that the injury occurred at home when she was mowing the lawn. Jones's own testimony also seems to indicate that the first time she felt back pain of a significant nature was when she was mowing her mother's lawn on Saturday May 6, 2000.
While Premdor's argument that the trial court's finding was against the great weight of the evidence is not without merit, we need not decide that issue because it is mooted by our holding as to one of Premdor's alternative arguments. Specifically, Premdor contends that it did not receive adequate notice of the alleged May 9, 2000, injury within the time required by law. We agree.
Section 25-5-78, Ala. Code 1975, provides, in pertinent part, that "no compensation shall be payable [to an injured employee] unless written notice is given within 90 days after the occurrence of the accident. . . ." "An employee is not entitled to workers' compensation benefits if she fails to provide notice." Bethea v. Bruno's, Inc., 741 So.2d at 1092. This court has stated that "[t]he purpose of written notice is to advise the employer that the employee received a specified injury, in the course of his employment, at a specified time, and at a specified place, so that the employer may verify the injury by its own investigation." Davis v. Paragon Builders, 652 So.2d 762, 764
(Ala.Civ.App. 1994). *Page 1154 
Jones admits that she did not provide written notice of her injury to Premdor within 90 days of its occurrence. However, even though § 25-5-78
 "does generally require that written notice be given to an employer by an injured employee within 90 days of an accident in order to recover compensation, . . . written notice is not required if it is shown that an employer had actual notice of the injury. Oral notice is sufficient to constitute actual notice."
Ex parte Harris, 590 So.2d 285, 287 (Ala. 1991) (internal citations omitted). Our Supreme Court determined that written notice was not required because
 "after reading the language now codified at § 25-5-78 in pari materia with that codified at §§ 25-5-59
and 25-5-88 . . . the Court concluded the employer's actual knowledge should be considered the equivalent of the statutory notice, `in keeping with the humane spirit of compensation laws.' [Ex parte Stith Coal Co., 213 Ala. [399,] 400, 104 So. [756,] 757 (1925)]."
Alfa Life Ins. Corp. v. Culverhouse, 729 So.2d 325, 328 (Ala. 1999).
Jones contends that she gave oral notice of her alleged workplace injury to agents of Premdor within 90 days of its occurrence. The question presented, however, is whether the content of that notice was sufficient.
Our Supreme Court has stated:
 "[W]ritten notice is not required if the employer had actual knowledge that the employee was injured in the scope of his or her employment. Wal-Mart Stores, Inc. v. Elliott, 650 So.2d 906, 908 (Ala.Civ.App. 1994). The employer must have actual knowledge that the employee's injury was connected to the employee's work activities. Id."
Ex parte Brown Root, Inc., 726 So.2d 601, 602 (Ala. 1998). InRussell Coal Co. v. Williams, 550 So.2d 1007 (Ala.Civ.App. 1989), this court defined "actual knowledge" for this purpose as:
 "`knowledge of such information as would put a reasonable man on inquiry. . . . Mere knowledge of disability following a traumatic injury is not sufficient, for the facts and circumstances of either the disability or the injury must be such as would put a reasonable man on inquiry that the disability is workrelated.'"
550 So.2d at 1012 (quoting Pojanowski v. Hart, 288 Minn. 77,81, 178 N.W.2d 913, 916 (1970)).
As previously noted, Jones testified that she first informed Premdor of her injury when, approximately an hour after she had allegedly sustained the injury, she informed plant manager Larry Cagle that her back was hurting. Responding to questions from her attorney, Jones testified that she told Cagle: "I just said, on the day of the injury, I told him, I said, `I did something to my back,' I said, `because it hurts,' and he said, `well, you know, because everyone complains about such things.' I thought it would go away." Jones again related the substance of the conversation when questioned by Premdor's attorney: "Well, I was hurting and kind of sweating, and he asked me kind of what was wrong, and I said, `Well, I did something to my back because I'm hurting,' and that was the end of the conversation." Jones also testified that on May 23, the day after she had returned to work following the initial injury, she informed her supervisor Kenny Price that she had injured her back. Specifically, Jones testified: "I said, `Kenny, I have hurt my back.' . . . I left and told him I had to get something done." *Page 1155 
While Jones's statements to Cagle, and later to Price, informed the Premdor agents that Jones had injured her back, those statements did not advise whether the injury occurred while Jones was performing her work duties. "The fact that an employer is aware that an employee has pain or [suffers from] a medical problem is not, by itself, sufficient to charge the employer with actual knowledge." Russell Coal Co., 550 So.2d at 1012. The employer must be notified that the employee was injured in the course of her employment. E.g., Ex parte Brown Root, Inc.,726 So.2d 601; Russell Coal Co., 550 So.2d 1007; Bethea v.Bruno's, Inc., 741 So.2d at 1092. By failing to inform Premdor that she injured her back while at work, Jones failed to comply with the notice requirement of the Workers' Compensation Act.
In contrast to her testimony regarding what she told Cagle and Price, Jones testified that sometime between September and November 2000 she went to the Premdor plant with a friend while she was off work and informed Premdor's general manager, Willie Hilliard, that "I had hurt my back on the job from pushing those heavy buggies. He told me that I would have to prove that." Jones specifically made this trip for the purpose of inquiring of Hilliard about obtaining workers' compensation benefits for the injury. But for its timing, this particular oral notification would have been sufficient in that it informed Premdor both that Jones had injured her back and that the injury had occurred on the job. However, because this notification was given, by Jones's own estimation, at least four and as much as six months after the date of the alleged injury, it did not qualify as timely notification under § 25-5-78.
 "Notice of injury is the first step in the compensation procedure, and its purpose is two-fold: `first, to enable the employer to provide immediate medical diagnosis and treatment in an effort to minimize the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury.'"
Thomas v. Gold Kist, Inc., 628 So.2d 864, 866 (Ala.Civ.App. 1993) (quoting Harbin v. United States Steel Corp.,356 So.2d 179, 182 (Ala.Civ.App. 1978)). See, e.g., Davis,652 So.2d at 764 ("Like written notice, oral notice imparts to the employer the opportunity to investigate and to protect itself against simulated and exaggerated claims."). "Without notice, the employee is not entitled to benefits." Gold Kist, Inc.,628 So.2d at 866.
Jones was aware of the proper procedure for providing notice to her employer concerning on-the-job injuries. Although she had provided timely notice of on-the-job injuries on two previous occasions, she did not do so in this instance. Jones's oral statements to Cagle and Price did not provide Premdor with adequate notice that she had sustained an injury while on the job. Therefore, we find the trial court's conclusion that Jones gave Premdor timely and proper notice of her injury to be in error. Accordingly, we reverse the trial court's judgment awarding workers' compensation benefits to Jones for her injury, and we remand the case for the trial court to enter a judgment consistent with this opinion. This determination pretermits any need to discuss Premdor's other arguments concerning the judgment of the trial court.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] Jones was not asked at trial to explain this entry in the notes.
[2] Jones was not asked about the contents of this report because the trial court initially deemed it inadmissible. The trial court later admitted the report after Jones had completed her testimony. *Page 1156