I respectfully dissent. I agree with that portion of Judge Moore's special concurrence (joined by Judge Thomas), in D E Investments, L.L.C. v. Singleton, 6 So.3d 506, 514-15, (Ala.Civ.App. 2007), where he writes, concerning oral notice of and an employer's knowledge of the work-related nature of an employee's injury, as follows:
 "After [Beatrice Foods Co. v.] clemons,[54 Ala.App. 150, 306 So.2d 18 (1975),] oral notice by an employee to an employer has been treated as being synonymous with `knowledge' if it sufficiently imparts to the employer information indicating that the employee received an injury in the course of his employment, thus enabling the employer to investigate further to determine the specifics of the injury and to protect its interests. See, e.g., Ex parte Slimp, 660 So.2d 994 (Ala. 1995).
 "After finding that [Singleton] had merely stated that he had hurt his back while `emptying the trash can,' the trial court concluded that that information, when coupled with [Stillings's] knowledge that [Singleton] regularly emptied a large trash can at the end of his shift, was sufficient to place a duty on [Kiva Dunes] to investigate further to determine if, in fact, [Singleton] was reporting a work-related injury. In reaching that conclusion, the trial court misapplied the law. Oral notice is not sufficient if it merely relates that the employee is in pain or has a medical problem, see, e.g., Premdor Corp. v. Jones, 880 So.2d 1148 (Ala.Civ.App. 2003); Fort James Operating Co. v. Crump, 947 So.2d 1053, 1067-68
(Ala.Civ.App. 2005), or if the employee reports an injury that could just as easily be non-work related. See Thomas v. Gold Kist, Inc., 628 So.2d 864
(Ala.Civ.App. 1993). Rather, in oral-notice cases, like other `knowledge' cases, the employee has the burden of notifying the employer that his injury is work related. Williams, supra. The employer's duty to investigate relates only to the details of the accident after the employee has provided the employer with information that the injury is work related. The employer has no duty to make the threshold determination of whether the employee is reporting a work-related injury.
 "By requiring [Kiva Dunes] to question [Singleton] further to determine if [Singleton] was, in fact, reporting that he had injured himself emptying the trash can at work as opposed to emptying his own trash can at home, the trial court erroneously relieved [Singleton] of his primary duty to notify [Kiva Dunes] that his injury was work related and placed the burden on [Kiva Dunes] to establish, through investigation, whether the injury was work related. Following the reasoning of the trial court's judgment, any time an employee reports an injury that could be work related, which is practically any type of orthopedic or neurological injury, the employer would *Page 523 
have a duty to interrogate the employee to determine if, in fact, the employee is referring to an occupational injury."
Singleton began working at D E Investments, L.L.C., d/b/a Kiva Dunes, as a golf-cart attendant on October 30, 2002. Before working for Kiva Dunes, Singleton owned and operated 5 convenience stores and eventually had up to 27 employees before he retired from that business in January 2001.
Singleton testified at trial that he injured his lower back on Saturday, November 8, 2003, while emptying a 55-gallon trash can at Kiva Dunes golf course. Singleton worked the rest of that day, as well as the next day, Sunday, November 9, 2003, and never reported his injury to anyone. As part of his usual work schedule Singleton was off on Monday, November 10, 2003, through Thursday, November 13, 2003. Singleton testified in his August 23, 2004, deposition that when he "got up on the 10th [of November, 2003], [his] back was really bothering [him] a lot" so he telephoned his supervisor, Mark Stillings, from home and
 "told Mark that [he] couldn't work. That coming Friday was [his] scheduled day. . . . And [he] call[ed] him to tell him that [he] wasn't going to work that Friday because [he] had hurt [his] back."
During that telephone call from his house, Singleton stated:
 "I told him I hurt my back and he asked me how, and I told him emptying the trash can."
Singleton's deposition was admitted into evidence at trial and the statement as to how he injured his back was identical to Singleton's statement provided on April 16, 2004, before this action was filed. In that statement, Singleton said:
 "That Monday Morning, with [sic] the Monday of the 10th, when I woke up that morning it was hurting down the front of my leg. So, I waited until about 8:30 you know to make sure that Mr. Stillings would be at work at that time and I called him at that time and told him that I had hurt my back emptying the trash can and that I was going to see my doctor as soon as I could and I definitely would not be at work my next scheduled day, which was Friday. He said okay, let me know how it's going."
The transcript of this statement was also admitted into evidence at trial.
At trial, however, Singleton attempted to change his story, and he testified that he told Stillings that he had hurt his back "emptying the trash can at work Saturday night." Singleton acknowledged the discrepancy with his previous testimony, and he admitted that he had twice before testified that he told Stillings that he had simply hurt his back "emptying the trash can." On this disputed factual issue as to what Singleton actually said to Stillings, the trial court found that Singleton had stated merely that he had hurt his back "emptying the trash can." The trial court's finding reflects that the trial court did not accept Singleton's trial testimony that he told Stillings he was injured "at work" or "on Saturday night." This factual determination is not at issue.
Singleton ultimately testified at trial as follows:
 "I would think [Kiva Dunes] would know that's what I meant.
 ". . . .
 "I thought they knew what I was talking about."
Kiva Dunes did not, however, understand Singleton to be complaining of an on-the-job injury. Stillings testified at trial that Singleton said nothing during this *Page 524 
conversation to indicate that his back problem was work related in any way:
 "Q. If [Singleton] would have said I hurt my back Saturday afternoon emptying the trash can at Kiva Dunes, would you remember that?
 "A. I would remember that.
 "Q. And if he would have said that, what would you have done?
 "A. I would have immediately treated it as a workers' compensation claim and filed a first report of injury.
 ". . . .
 "Q. Do you remember Mr. Singleton saying anything to you during the course of that conversation to indicate that this was a work-related claim in any way?
 "A. No, sir.
 ". . . .
 "Q. And is what you've been telling us here basically your general recollection of kind of the theme of the conversation for lack of a better term; is that a fair statement?
 "A. My remembrance of the phone call was that the problem he was having was somewhat general in nature, his back was bothering him. There was nothing that I can remember in that conversation that led me to believe that it was incident specific or work related in any shape or form.
 "Q. That's kind of a conclusory statement that you're drawing saying that looking back now at that conversation there was nothing in it that triggered you to think this was a comp. claim and we're treating it as such, right?
 "A. That's correct.
 "Q. You knew what Mr. Singleton's job duties were and what his responsibilities were in the performance of his job, correct?
 "A. Yes, sir.
 "Q. And you knew that emptying the trash can at the end of the day after he cleaned out the golf carts and got them ready for the next day's use was one of his responsibilities?
 "A. Yes, sir.
 "Q. If he had told you that I injured my back emptying the trash can, is that not something that you understood his job which would have triggered you to think, you know, let me ask you a few more questions and see if this is something that happened at work?
 "A. There was nothing that I remember him telling me that would have led me to believe that it was work-related in any way."
Stillings testified further that in the context of Singleton's telephone call to Stillings on November 10, 2003, he simply could not have connected Singleton's statement that he had hurt his back "emptying the trash can" with a work-related accident:
 "A. With that statement being made, I don't think that I could have put the two together. The fact that `I've hurt my back emptying the trash can,' he was calling me from home, I could not have tied those two together.
 "Q. So that would not have prompted you to ask any more questions that had been stated?
 "A. No, sir."
After the November 10, 2003, telephone conversation, Singleton sought medical treatment from a doctor he had chosen. Singleton filed a claim for his' treatment with his private health insurance, and his private health insurer paid for his medical treatment, with Singleton personally paying a co-payment for each visit to his doctor. *Page 525 
While Singleton was off work because of his injury, he periodically telephoned Stillings to provide him with updates and progress reports of his treatment. During those calls over several months, Singleton never requested that Kiva Dunes pay for his medical treatment or that it provide any workers' compensation payments or benefits. Singleton testified: "I didn't ask them. I thought that was their ball game to do that."
On March 31, 2004, the human resources department of Kiva Dunes informed Singleton of his option under its Family Medical Leave Policy to apply for Kiva Dunes' Consolidated Omnibus Budget Reconciliation Act (hereinafter "COBRA") health-insurance plan in order to continue his private health insurance. Singleton came to Kiva Dunes' office and completed a COBRA application on March 31, 2004, but again failed to tell anyone at Kiva Dunes that his back injury was work related. Singleton stated:
 "Q. And up until, I guess April of 2004, you hadn't made any claim or said anything to anyone at Kiva Dunes about receiving benefits under workers' comp.; is that right?
 "A. Right.
 "Q. And can you tell me why you didn't seek those benefits?
 "A. I had reported the injury to them and I thought it would be their responsibility to take care of it."
Although Singleton had indeed reported that he had been injured, he never reported that the injury occurred atwork. On April 1, 2004, the very next day after Singleton completed the COBRA application, Kiva Dunes first learned of Singleton's claim for workers' compensation benefits through a telephone call from his attorney. Kiva Dunes completed a "First Report of Injury" that same day.
In its August 18, 2006, order the trial court found as follows, in pertinent part, with regard to whether Singleton had provided Kiva Dunes with notice that he had suffered a work-related injury:
 "5. The following day, Monday, November 10, 2003, [Singleton] testified that he telephoned the office at about 8:30 to 9:00 in the morning to talk to his supervisor, Mark Stillings, who was the director of golf at Kiva Dunes golf course.
 "6. [Singleton] specifically testified that he told Mr. Stillings that he would not be able to come to work the following Friday, November 14, 2003, which was his next scheduled day to work. In particular, [Singleton] testified that he informed Mr. Stillings that the reason he would not be able to come to work that following Friday was that he had injured his back lifting the trash can."
The trial court, however, did not find that Kiva Dunes had "actual knowledge" of the alleged workplace injury. Instead, the trial court concluded that Singleton's statement that he had hurt his back "emptying the trash can" was "sufficient notice" of an injury in the line and scope of his employment and/or sufficient notice to "put a reasonable man on inquiry":
 "9. Mark Stillings testified at trial that he was fully aware that one of the specific duties which [Singleton] was required to perform at Kiva Dunes was the emptying of the 55-gallon trash container at the end of the day. The Court hereby finds that when [Singleton] reported to Mr. Stillings that he had hurt his back while emptying the trash can, this constituted sufficient notice to [Kiva Dunes] that this was an injury which occurred within the line and scope of his employment. Under the authority of Russell Coal Company v. Williams, 550 So.2d 1007 (Ala.Civ.App. *Page 526 
1989), the court finds that this constituted notice which was sufficient as to `put a reasonable man on inquiry that the injury [was] work-related.'"
(Emphasis added.) The trial court then determined that "[Singleton] provided, and [Kiva Dunes] received, sufficient notice of that injury on November 10, 2003, when [Singleton] reported to his supervisor, Mr. Mark Stillings, that he had injured his back while emptying the trash can."
On appeal, the Court of Civil Appeals, however, reversed the judgment of the trial court and held that Singleton's statement that he was "emptying the trash can" did not constitute legally sufficient notice:
 "Singleton's statement . . . did not indicate that the alleged injury was work related. Given the trial court's specific determination of the content of Singleton's statement, that statement did not provide notice of a connection between Singleton's back injury and his employment. Although Stillings knew that Singleton's work duties included emptying a trash can, there was nothing in Singleton's statement that he had `injured his back while emptying the trash can' identifying the `trash can' referred to in the statement at the one at Kiva Dunes."
D E Investments, L.L.C., 6 So.3d at 511.
In reversing the trial court's judgment, the Court of Civil Appeals relied on Premdor Corp. v. Jones,880 So.2d 1148 (Ala.Civ.App. 2003), stating:
 "In Premdor . . . this court reversed a trial court's judgment awarding an employee workers' compensation benefits because, this court concluded, the employee had not given her employer proper notice of her injury. In that case, the employee, Renelda Jones, worked as a buggy loader for her employer, Premdor Corporation. 880 So.2d at 1149. As a buggy loader, Jones loaded pieces of wood used in the manufacturing of doors into carts and pushed the carts to another work station. Id. Jones argued that she had given Premdor oral notice of her alleged work-related injury within 90 days of its occurrence. Id. at 1154. This court stated:
 "`Jones testified that she first informed Premdor of her injury when, approximately an hour after she had allegedly sustained the injury, she informed plant manager Larry Cagle that her back was hurting. Responding to questions from her attorney, Jones testified that she told Cagle: "I just said, on the day of the injury, I told him, I said, `I did something to my back,' I said, `because it hurts,' and he said, `well, you know, because everyone complains about such things.' I thought it would go away." Jones again related the substance of the conversation when questioned by Premdor's attorney: "Well, I was hurting and kind of sweating, and he asked me kind of what was wrong, and I said, `Well, I did something to my back because I'm hurting,' and that was the end of the conversation." Jones also testified that on . . . the day after she had returned to work following the initial injury, she informed her supervisor Kenny Price that she had injured her back. Specifically, Jones testified: "I said, `Kenny, I have hurt my back.' . . . I left and told him I had to get something done."
 "`While Jones's statements to Cagle, and later to Price, informed the Premdor agents that Jones had injured her back, those statements did not advise whether the injury occurred while Jones was performing her work duties. "The fact that an employer is aware that an employee *Page 527 
has pain or [suffers from] a medical problem is not, by itself, sufficient to charge the employer with actual knowledge." Russell Coal Co. [v. Williams], 550 So.2d [1007] at 1012
[(Ala.Civ.App. 1989)]. The employer must be notified that the employee was injured in the course of her employment. E.g., Ex parte Brown Root, Inc., 726 So.2d 601 [(Ala. 1998)]; Russell Coal Co., 550 So.2d 1007; Bethea v. Bruno's, Inc., 741 So.2d [1090] at 1092
[(Ala.Civ.App. 1999)]. By failing to inform Premdor that she injured her back while at work, Jones failed to comply with the notice requirement of the Workers' Compensation Act.'
 "880 So.2d at 1154-55.
 "In this case, the trial court found that Singleton had told his supervisor Stillings in a telephone conversation that he had `injured his back while emptying the trash can.' The trial court found that, because Stillings knew that Singleton's work duties included emptying a 55-gallon trash can, Singleton's statement to Stillings provided proper notice of Singleton's injury. However, Singleton's statement, like Jones's statement in Premdor, did not indicate that the alleged injury was work related. Given the trial court's specific determination of the content of Singleton's statement, that statement did not provide notice of a connection between Singleton's back injury and his employment. Although Stillings knew that Singleton's work duties included emptying a trash can, there was nothing in Singleton's statement that he had `injured his back while emptying the trash can' identifying the `trash can' referred to in the statement as the one at Kiva Dunes."
D E Investments, 6 So.3d at 511.
Although notice may be deemed sufficient if the employer has such knowledge as would put a reasonable man on inquiry that the injury is work related, the employer, nevertheless, must have some knowledge connecting the injury to work-related activities. Ex parte Brown Root, Inc.,726 So.2d 601, 602 (Ala. 1998); Ex parte Slimp, 660 So.2d 994
(Ala. 1995). Singleton is correct in that findings of fact in a workers' compensation case based on ore tenus evidence are presumed correct on appeal and that the trial court is in the best position to determine the credibility of the evidence.Tallassee Super Foods v. Hepburn, 819 So.2d 63
(Ala.Civ.App. 2001). However, in this case there is no evidence indicating that Singleton's supervisor had actual knowledge connecting Singleton's injury to work-related activities.
As shown above, Singleton was an employee at Kiva Dunes for less than 13 months when he was injured. Before this employment, he had owned and operated 5 convenience stores and had 27 employees. He was injured on the evening of November 8, 2003, a Saturday night, and at that time he gave no notice to his employer. He worked the next day, a Sunday, and still gave no notice of his injury to his employer. He telephoned the following day on Monday from his home, on a day that was not a workday for him, and stated that he had hurt his back emptying the trash can. Although his supervisor knew that one of his duties at work was to empty a trash can, it is also reasonable to assume that he had a trash can or cans at his house, as do most people. It is also reasonable to assume that he occasionally emptied his trash cans at his house, as do most people. The trial court found that all Singleton told his employer, other than that he would not be able to be at work on his next scheduled workday four days later, was that he had hurt his back emptying the trash can. Though Singleton was *Page 528 
a former employer himself, he neither mentioned nor requested compensation benefits, which would certainly have put Kiva Dunes on notice that the injury was work related. He used his health-insurance coverage to cover his medical expenses, even paying his own co-payment, rather than requesting that Kiva Dunes workers' compensation carrier pay these charges. A request to Kiva Dunes to pay his medical expenses would certainly have put Kiva Dunes on notice. During the numerous conversations he had with his supervisor while off work from his injury, Singleton never mentioned the trash can again, never referred to having been injured while at work, and never inquired about any workers' compensation benefits of any kind or character. Other than the "trash can" conversation of November 10, 2003, no other communication, oral or written, ever alluded to or mentioned any work-related nature of his injury to his employer for the next four and one-half months, until the day after Singleton completed a COBRA application when his counsel telephoned Kiva Dunes.
The employee has the burden of proving that the employer had notice or knowledge of the alleged work-related injury.Wal-Mart Stores, Inc. v. Elliott, 650 So.2d 906, 908
(Ala.Civ.App. 1994). In this proceeding, especially given the trial court's finding on the disputed evidence as to what Singleton stated to his employer on the only occasion, among numerous opportunities, that he gave a reason for his back pain, the employer was not given sufficient knowledge to connect the injury to any work-related activities.
SEE, J., concurs.